# JOHN S. GITTINGS

## *vs.*

## FRANK G. SCHENUIT, An Infant.

*Automobiles: collisions; negligence; case withdrawn from jury.*

A large automobile, brilliantly lighted, left the court of the Lyric, in Baltimore City, after the performance of an opera; on coming out into Mt. Royal Avenue, the machine ran into a small automobile which was not provided with lights, as required by law, and was very dark; it appeared that the larger machine had not advanced until the signal was given by the police officer in charge of vehicles on that occasion; that it was being driven very slowly, and that as soon as the chauffeur perceived the other automobile he did all that he could to avert a collision; in an action for damages brought against the owner of the larger machine by the owner of the smaller machine which was run into, it was *held,* that in the absence of any evidence of negligence on the part of the defendant or person operating his machine the case was not one proper to be submitted to the jury.        p. 287

The mere violation of an ordinance or statute will not support or defeat an action (for injuries received by the party injured), unless it is shown that the injuries were directly occasioned by such neglect.        p. 285

*Decided January 14th, 1914.*

Appeal from the Baltimore City Court. (STUMP, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*William Colton,* for the appellant.

*J. Leroy Hopkins,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a judgment obtained by the appellee against the appellant for damages to his automobile alleged to have been sustained by the negligence of the defendant's agent. There are eleven bills of exception presenting rulings on evidence, and one presenting the rulings on the prayers—the two offered by the plaintiff having been granted and four of nine offered by the defendant having been rejected.

The automobile owned by the plaintiff was a small one which he was using at the time in delivering packages. He purchased it second-hand and paid only $50.00 for it, although he said he afterwards spent about $100.00 on it. One peculiarity of the case is that the verdict rendered was just double what the automobile had cost the plaintiff, including repairs and improvements to it, and that too notwithstanding the fact that it was repaired after the accident for $75.00. But of course the only concern this Court could have with that would be whether the measure of damages allowed by the Court was correct, and in the view we take of the case it is not necessary to consider that question.

The defendant's automobile was an eighteen horse-power Packard, which seated four persons inside and two outside, but at the time of the accident there were five inside. There was an opera at the Lyric that night, and on such occasions policemen are stationed at the entrance to the court connected with the Lyric, so as to direct the movement of automobiles and the people crossing the pavement along Mt. Royal avenue, on which the Lyric is situated. The chauffeur had been

waiting with his car on the corner of Oliver street and Mt. Royal avenue when young Mr. Gittings notified him that the rest of the family were ready. He then drove in to the court, got the family in the car and after blowing his horn the policeman stationed at the pavement signalled to him to come on. The chauffeur thus described what then took place: "I comes out of there and as soon as I got about the width of my car, which is about fourteen feet long, away from that car there, well, fourteen and the end of my car would be about twenty-eight feet, some black thing shot out of there like that (indicating), and I was coming out and I throwed my brakes on and I cut her over this way (indicating), that brings my wheel in this way and throws my spring out, the mud guard of this machine hits the hind wheel, and the mud guard of the machine grabs him in the hind wheel, and it is his own force that swings him around this way. I was to a dead stand-still." The plaintiff and one other boy were riding in the front of his automobile and another boy was in the rear, but neither of them saw the defendant's car before the accident—although they said that just before it struck a bright light shot into the plaintiff's car. There is not a particle of evidence to show that the defendant's car was going fast, but, on the contrary, not only the evidence of the chauffeur, but that of Mr. O'Neill, connected with the Stewart Taxi Cab Company, who was standing on the pavement and was called as a witness by the plaintiff, shows that it was running at a moderate speed. There was a line of automobiles along Mr. Royal avenue near the curb, with an open space to pass into the Lyric court. The plaintiff testified, "I was on the righthand side of the street, I should say about six feet away from the other automobiles that were travelling along the curb." One of the boys who was in the car with the plaintiff, on cross-examination described the situation as follows: "Q. And if you had been looking in the direction of his machine before the collision you would have seen these radiators displaying this luminous light, would you not? A. At that time there were automobiles all lined up and down

Mt. Royal avenue leaving a little space for this roadway that come out of the Lyric into Mt. Royal avenue. Q. Was this an opera night? A. Yes; I think it was. Q. And there were a great many automobiles congregated there, waiting for their occupants, is that right? A. Yes. Q. Now, your automobile threaded its way along through this narrow passage, the only passage open at that time? A. Yes, about a yard and a half from these other automobiles. Q. About a yard and a half away, that is the lane you kept in? A. Yes."

The uncontradicted evidence is that the defendant's car had four bright lights in front and two in the rear, while the plaintiff's car only had one (what he called) motor-cycle gas lamp in front, and a red light in the rear. The statute (Sec. 149 of Art. 56 of Code of 1912) requires that from one hour after sunset until one hour before sunrise, every motor vehicle (excepting motor cycles) shall "display two or more white lights on the forward part of such vehicle, so placed as to be seen from the front and of sufficient illuminating power to be visible at a distance of two hundred feet, and shall also display on the rear of such vehicle a lamp so placed that it shall show a red light from the rear and a white light at the side." The attorney for the appellee, who has shown commendable zeal and industry, as well as ability, in the preparation of his brief, has cited a number of authorities to show that the violation of the statute by his client did not prevent a recovery by him, unless it was the proximate cause of the injury. Amongst others he cited *Babbitt on Law of Motor Vehicles*, sec. 952; *Bourne* v. *Whitman*, 209 Mass. 155; *Belleveau* v. *Lowe Supply Co.*, 200 Mass. 237; and also some of our own decisions to the effect that the mere violation of an ordinance or statute by a defendant will not of itself support an action for injuries sustained, but that it must be shown that the act which constituted the breach of the ordinance or statute was the proximate cause of the accident. *B. & O. R. R. Co.* v. *State, use of Miller.* 29 Md. 252; *McMahon's case*, 39 Md. 438; *McDonnell's Case.* 43 Md. 534; *Reidel* v. *P., W. & B. R. R. Co.*, 87 Md. 153, and

also section 144 of Article 56. But conceding that such is
the general rule, the difficulty that confronts the plaintiff is
that he has utterly failed to prove negligence on the part of
the defendant's agent in charge of the car, and the plaintiff's
failure to provide the lights required by the statute strength-
ens the position in effect taken by the chauffeur, that he
did all he could to avoid the accident when he discovered the
plaintiff's car. If the plaintiff had had such lights as the
statute requires, it may have been that the chauffeur would
have seen them in time to have prevented the collision, and
without meaning to hold, that the mere failure to comply with
the statute in the respect spoken of, was such contributory
negligence as to prevent a recovery, it would require much
more evidence than there is in this record to support a recov-
ery by a plaintiff, who was running his car at a place and
under circumstances which not only required him to be on
the alert to avoid injury to himself and others, but to give
reasonable notice of his approach, which he, in a very im-
portant respect, wholly failed to do. If he had had such lights
as the statute requires, they might or might not have been
seen by the defendant's chauffeur, but we cannot assume that
they would not have been. Certain it is that the chauffeur
was not made aware of the approach of a car by the light that
was in front of this one. The line of automobiles that stood
near the curb would necessarily somewhat obstruct the view
of the chauffeur coming out of the Lyric court, and if the
plaintiff was on the lookout as he should have been as he
approached the place leading into that court he had a much
better opportunity to know that the defendant's car was mov-
ing into Mt. Royal avenue, by reason of the bright lights on
it, than the defendant's chauffeur had of the approach of the
plaintiff's car, which only had such a light on it as has been
described.

The defendant's agent had as much right to run his car
out of the Lyric court and across Mt. Royal avenue to the
street which would take him to his destination, as the plain-
tiff had to run his car on that avenue. So far as the record

shows the chauffeur did everything that he was called upon
to do, and nothing that he had no right to do. His car com-
plied with the requirements of the statute, he blew his horn
as he approached the avenue, received the signal from the
policeman to move on, and there was nothing to warn him
of this car crossing the path he was about to take. He was
running at a moderate speed and according to the uncon-
tradicted evidence, just as soon as he discovered the plain-
tiff's car he used all reasonable efforts to avoid a collision
with it. It was not negligence on his part to look ahead of
him as he started to cross the avenue, but on the contrary it
was his duty to keep a sharp lookout in the direction he was
going. It may be that Mt. Royal avenue is well lighted
about the place where the accident happened, but with the
number of automobiles that were standing on the sides of the
street and some that were moving, the attention of the chaffeur
was not likely to be attracted to the car of the plaintiff when
it was so poorly lighted.

Under the circumstances it is impossible for us to say that
there was legally sufficient evidence of negligence on the part
of the defendant's agent to justify the Court in submitting
the case to the jury. If the chauffeur was guilty of negli-
gence in what he did, the plaintiff was certainly equally neg-
ligent in what he did and omitted to do. So without discuss-
ing the other questions presented by the record we are of the
opinion that the defendant's first and second prayers should
have been granted, and the judgment must be reversed with-
out a new trial. This Court has determined too many cases
in which there were similar prayers to require the citation of
authorities, and the principles by which we must be governed
in passing on them are so familiar and have been so often
announced that we will not repeat them.

> *Judgment reversed, without awarding a
> new trial, the appellee to pay the costs.*