FLORENCE C. SULLIVAN, by Fleury F. Sullivan,
HER FATHER AND NEXT FRIEND,

*vs.*

WILBUR F. SMITH.

*Negligence: automobiles; fault of party injured; stepping in
front of automobile.   Prayers.   Evidence:
impossible to believe.*

In an action for damages, for injuries received by the plaintiff from the defendant's automobile, the following prayer was not objected to:  If the jury find " * * * *that the injuries complained of resulted from an unavoidable accident unmixed with negligence on the part of the servant of the defendant in charge of the automobile referred to in the evidence, then the verdict of the jury must be for the defendant, and by negligence is meant failure to exercise such reasonable care as a reasonably prudent person would have exercised under like circumstances.*"

p. 553

Under the circumstances of the case, with no evidence to show that the chauffeur of the defendant was running the car at excessive speed, the following prayer was found correct:  That if the jury *"find from the evidence in the case that the plaintiff* stepped or ran in the way of the automobile * * * when it could not be arrested in its course, and, under the circumstances, where with ordinary care * * * the car could not be brought to a pause early enough to save the plaintiff from injuries, the defendant is not liable, and the verdict of the jury must be for the defendant.*"           pp. 553, 554

Art. 1, sec. 4, of the Ordinance of 1908 (Mayor, Etc., of Balto., No. 188, approved July 10th, 1908), does not require drivers of automobiles to sound their horn or give an audible signal every time they pass a vehicle standing in the street.

pp. 559, 560

It was further *held,* that, under the facts of the case, the prayer could not be objected to, on the ground that the question of speed was not submitted to the jury.           p. 554

When a witness says he looked and did not see an object which he must have seen, if he did look, such testimony is unworthy of consideration.                    p. 556

*Decided June 25th, 1914.*

Appeal from the Superior Court of Baltimore City. (HEUISLER, J.)

The facts are stated in the opinion of the Court.

The following are the prayers that were offered by the plaintiff and by the defendant, and the action of the Court thereon:

*Plaintiff's First Prayer*—If the jury find from the evidence that on or about November 15th, 1911, the plaintiff while walking across one of the streets of Baltimore City, known as Cedar avenue, was injured by being struck and knocked down by the automobile of the defendant, while operated by his servant or agent, and that such injury might have been avoided by the exercise of ordinary care and prudence on the part of the defendant's servant or agent in the management and operation of said automobile, then their verdict shall be for the plaintiff, unless they shall find that the injury complained of resulted from the want of such care and prudence on the part of the plaintiff as ought under all the circumstances, to have been reasonably expected from one of her age and intelligence. (*Granted.*)

*Plaintiff's Second Prayer*—Even if the jury find that there was want of such ordinary care on the part of the plaintiff as ought under all the circumstances to have been reasonably expected from one of her age and intelligence, yet she is entitled to recover, provided the jury further find that the chauffeur in charge of the automobile of the defendant could have avoided the accident by the exercise of ordinary care, after he saw, or by the use of ordinary care might have seen, that the plaintiff was in the roadway of Cedar Avenue, and in danger of being struck by the said automobile. (*Granted.*)

*Plaintiff's Third Prayer*—If the jury shall find a verdict for the plaintiff, then in estimating the damages, they are to consider her health and condition before the injury complained of, as compared with her present condition in consequence of said injury; and also the physical and mental suffering, if any, to which she has been subjected or will be subjected by the reason of said injury, and to allow her such damages as in the opinion of the jury will be a fair and just compensation for the injury she has sustained. (*Granted.*)

---

*Defendant's First Prayer*—The Court instructs the jury that if they find from the evidence that the injuries complained of resulted from an unavoidable accident unmixed with negligence on the part of the servant of the defendant in charge of the automobile referred to in the evidence then the verdict of the jury must be for the defendant, and by negligence is meant failure to exercise such reasonable care as a reasonably prudent person would have exercised under like circumstances. (*Granted.*)

*Defendant's Second Prayer*—The Court instructs the jury that if they find from the evidence in the case that the infant plaintiff stepped or ran in the way of the automobile of the defendant when it could not be arrested in its course, and under circumstances where with ordinary care on the part of the chauffeur the car could not be brought to a pause early enough to save the infant plaintiff from injury, the defendant is not liable, and the verdict of the jury must be for the defendant. (*Granted.*)

*Defendant's Third Prayer.*—The Court instructs the jury that the mere happening of the accident complained of raises no presumption of negligence on the part of the servant of the defendant operating the automobile referred to in the evidence, but the burden is upon the plaintiff to establish by a fair preponderance of affirmative evidence that negligence on the part of said servant caused said accident, and if the

minds of the jury are left by the evidence in a state of even balance as to the existence of such negligence, then the verdict of the jury must be for the defendant.    (*Granted.*)

*Defendant's Fourth Prayer*—The defendant prays the Court to instruct the jury that under all the evidence in this case there is nothing in Article 1, section 4 of the Ordinance of 1908, referred to in the evidence, in relation to the rules of the road which required the driver of the defendant's automobile to give plainly visible or audible signal when approaching the place where the accident occurred.    (*Granted.*)

*Defendant's Fifth Prayer*—The Court instructs the jury that there is no evidence in this case legally sufficient under the pleadings to entitle the plaintiff to recover, and the verdict of the jury must therefore be for the defendant.    (*Refused.*)

*Defendant's Sixth Prayer*—The Court instructs the jury that it appears from the uncontradicted evidence in this case that negligence on the part of the infant plaintiff directly contributed to the happening of the accident complained of, and that therefore the verdict of the jury must be for the defendant.    (*Refused.*)

The cause was argued before BOYD, C. J., BRISCOE, BURKE, STOCKBRIDGE and CONSTABLE, JJ.

*George Weems Williams* and *William Pepper Constable* (with whom was *Michael H. Fahey* on the brief), for the appellant.

*German H. H. Emory* and *C. John Beeuwkes,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellant sued the appellee for injuries sustained by her as the result of the alleged negligence of the agent of the latter in running his automobile.    There are four bills of exception in the record,—the first three presenting rulings on the admissibility of evidence and the fourth those on the prayers.    The plaintiff offered three prayers, all of which were granted, and the defendant offered six, the first, second,

third and fourth of which were granted and the fifth and
sixth were rejected. The fifth sought to take the case from
the jury on the ground that there was no evidence legally
sufficient under the pleadings to entitle the plaintiff to re-
cover, and the sixth relied on the alleged contributory negli-
gence of the plaintiff as a bar to recovery. As the last two
were not granted, there is no exception to the rulings on
them, but the appellee contends that they ought to have been
granted, and hence the judgment should not be reversed,
even if the Court be of the opinion that there was error in
other rulings of the lower Court—relying on *Slate, use of
Bacon,* v. *B. & P. R. R. Co.,* 58 Md. 482; *Bowman* v. *Little,*
101 Md. 273, and other authorities cited, but while the ques-
tions involved in them will be referred to, it will not be nec-
essary to pass on those prayers.

The defendant's car was a Packard with a limousine body,
weighing about 4500 pounds. The accident happened on
Cedar Avenue in the City of Baltimore. There is some con-
fusion about the number of the house where the plaintiff
was living with her grandmother, and where she came from at
the time of the accident, but we understand it to be No. 3008.
Cedar Avenue on that block is described as having a brick
sidewalk six feet wide from the steps of the houses and then
there is a space between that and the curb of a little over
six feet. The street from curb to curb is about forty feet
wide and just outside of the curb on the west side is a gutter
about three feet wide. The street runs north and south and
No. 3008 is on the west side. There is a peculiar conflict of
testimony as to whether there was a wagon standing near
3008, but according to the plaintiff's witnesses there was a
delivery wagon standing somewhere between 3010 and 3006.
The most accurate description of it seems to show that the
back of the wagon was about opposite the step of No. 3010
with the horse facing south.

The chauffeur of the defendant and the occupants of Dr.
Likes' car, which was going the same direction as the defend-

ant's and about thirty or forty feet behind it, said they saw no wagon standing there. Mrs. Lewis, a witness for defendant, said she was living at No. 3020, and was going to 3010; that Mr. Carroll's wagon came down the street and stopped at 3018 and delivered an order there; that she passed the wagon when it was between 3016 and 3014; that the wagon was not at 3010 until after the accident. It is impossible to reconcile the statements of the witnesses about the wagon, although there is no reason to suppose that any of them were intentionally testifying to an untruth. In some respects the defendant's case is stronger on the theory that the wagon was at the place where most of the plaintiff's witnesses place it—a foot or two beyond the gutter and somewhere between 3010 and 3006. For the purposes of this opinion we will assume that it was; there, as the weight of the testimony so shows. It is described as being about five feet nine inches wide. The plaintiff had been talking with Mr. Meyers on the steps of her grandmother's house and started across the street to tell her that he was there. Her grandmother was at Mr. Landes' store, which was No. 3001 Cedar Avenue and on the corner of that avenue and a small street known as Bay Street.

The testimony of the plaintiff was that she walked down to the gutter, stopped and looked up and down the street to see if anything was coming, and as she did not see anything she started across the street about two or three feet in front of the horse hitched to the wagon. Her testimony is somewhat confused as to how far she then went before stopping again, but we understand her to mean that when she passed in front of the horse to a point about even with the left wheels of the wagon, she stopped again and looked up and down the street, and seeing nothing started diagonally towards Mr. Landes' store, but was struck by the automobile soon afterwards.

The theory of the defendant is that she ran from the house into the street and was struck by the right front wheel of

the automobile. The chauffeur testified: "The little girl I did not see until she run into the side of the front wheel of the car; as soon as I saw her, I veered the car a little to keep from running over her, but the momentum of the child carried her on and the car struck her and she rolled over, and the rear wheel went over her." Mrs. Lewis, who was on the pavement of No. 3010, said: "She run out off the steps, after talking to the man, right out in front of the automobile and never stopped; I seen it, standing there; I seen it all; she run out and the front wheel struck her in the side of the head and the hind wheel run over her, and I just stood there and I couldn't move." She was asked where the child was picked up and replied: "Out in the street between her house and the next house; she run cata-cornered between the two trees." There was a line of trees on the west side of Cedar Avenue, but as the accident was on November 15th, and as no mention is made of them obstructing the view, the leaves were probably off.

In their brief the attorneys for the plaintiff say the controverted facts are, broadly speaking: 1. "Whether Carroll's grocery wagon was standing on the west side of Cedar Avenue near 3008 at the time of the accident, and thereby screened from the view of the plaintiff the approaching automobile; 2. Whether the plaintiff in crossing the street used due care in looking and listening, or ran heedlessly, and without looking, into the defendant's (appellee's) machine; 3. Whether Maynard, the chauffeur, by the exercise of proper care, could have avoided the accident; the decision of which depends upon—(a) Whether he should have sounded his horn; (b) Whether he should have seen, or did see, the plaintiff in time to either stop his car, or divert its course, and thus have avoided the accident; (c) Whether he caused the accident by changing the course of the automobile to the westward after he cleared the wagon."

As already stated we will assume that a wagon was standing with the rear in front of the steps of 3010, but the evi-

dence is strong, if not conclusive, that the plaintiff could have seen the car approaching if she looked before leaving the curb. There is certainly evidence strongly tending to show that she ran heedlessly, and without looking, into the defendant's machine, and if it be conceded that that was a question for the jury, the defendant had the right to have the jury instructed as to his theory of the case. We will consider the questions (*a*), (*b*) and (*c*) stated above in discussing the prayers.

The defendant's first prayer does not seem to be objected to. It instructed the jury that if they found "that the injuries complained of resulted from an unavoidable accident unmixed with negligence on the part of the servant of the defendant in charge of the automobile referred to in the evidence, then the verdict of the jury must be for the defendant," and then went on to define negligence. The defendant's second prayer, the granting of which the appellant contends was specially injurious error, was as follows: "The Court instructs the jury that if they find from the evidence in the case that the infant plaintiff stepped or ran in the way of the automobile of the defendant when it could not be arrested in its course, and under circumstances where with ordinary care on the part of the chauffeur the car could not be brought to a pause early enough to save the infant plaintiff from injury, the defendant is not liable, and the verdict of the jury must be for the defendant." That prayer is the same as the defendant's eighth granted in *McDonnell's Case,* 43 Md. 534, and the defendant's third granted in *Carneal's Case,* 110 Md. 211, but in neither case did this Court pass on them, as the appeals were by the respective defendants.

While such a prayer might be misleading in some cases we do not see how it could have been in this. From what we have said it will be seen that the defendant's theory was that the plaintiff ran from the sidewalk into the front of the car so suddenly and unexpectedly that it was impossible for the

chauffeur to avoid striking her. The Court in granting the plaintiff's first prayer had told the jury, in very broad terms, that if they found the "injury might have been avoided by the exercise of ordinary care and prudence on the part of the defendant's servant or agent in the management and operation of said automobile," the defendant was liable, unless they also found that the plaintiff was guilty of contributory negligence, and by the second prayer that even if the plaintiff was negligent she was entitled to recover if the jury found that the chauffeur "could have avoided the accident by the exercise of ordinary care, after he saw, or by the use of ordinary care might have seen that the plaintiff was in the roadway of Cedar Avenue, and in danger of being struck by the said automobile." Of course if the defendant's agent had been running the car in a negligent manner, for example was running at excessive speed, the prayer as it is framed would be objectionable. A chauffeur might not be able to stop or check his machine in time to avoid an accident, because he was running at such an excessive speed that he could not stop or check it, and under such circumstances he would not be excused. But there is not a particle of evidence that the chauffeur of the defendant was running at such a speed—on the contrary witnesses for the plaintiff as well as those for the defendant testified that he was running at a moderate, or at least at a lawful speed. There could therefore be no objection to this prayer for not submitting the question of speed to the jury.

Whether or not the chauffeur was guilty of negligence in not sounding his horn must depend upon whether he was required to do so by statute or ordinance, or whether the circumstances were such as to require him to give some such signal. As will be seen in our consideration of the defendant's fourth prayer we are of the opinion that Article 1, Section 4 of the ordinance of 1908, was not applicable, and we also think that no negligence can be imputed to him by reason of Section 150 of Article 56 of the Code of 1912.

The chauffeur testified that he did not see the plaintiff until she was within a few inches of his machine. There is nothing to contradict that statement, and if the wagon was there as the plaintiff contends and we assume to be true, he could not have seen her as he went around the wagon. He had no reason to suppose that either a child or an adult would run out from the sidewalk at that point, from behind the wagon. There is no statute and no ordinance in evidence which requires drivers of automobiles to sound their horns every time they pass around other vehicles standing in the street, as this wagon was. Such signals would be useless in many localities if they were so required, as they would be so frequent as to be of little or no warning. There was nothing in this instance to suggest to the chauffeur that it was necessary to blow his horn to prevent injury to other persons using the highway. But beyond all that, it is not contended that the plaintiff was relying on such a signal, and was misled by it not being given, and it cannot be said that the omission to sound the horn was in anyway the cause of the accident. The plaintiff testified that she looked and there was nothing coming. Just why the chauffeur ought to have seen this little girl, when she swore she looked and did not see such a large object as this automobile, is not explained. It was argued for the appellant that if the occupants of Dr. Likes' car could see her the chauffeur ought to have seen her, but that does not follow, as a driver of an automobile necessarily has to give attention to a number of things, and it might well be that when the occupants of Dr. Likes' car saw her at the gutter, the chauffeur was at that time engaged with his machine or attracted by something else which his duty required him to observe. On the east side of the street Mr. Landes was then holding his team waiting until this automobile passed so he could back his team into the alley, and it may be that the chauffeur was looking at that team just as the little girl came out to the street.

It is impossible to know in many cases precisely what did happen, when there is contradictory evidence, but there are some well established rules by which we must be governed. One is that when a witness says he looked and did not see an object, which he must have seen, if he did look, "such testimony is unworthy of consideration," to use the language of the opinion in *Helm's Case,* 84 Md. 515, which has been followed and applied a number of times.

While we do not want to be understood as accusing this little girl who was only seven years of age of deliberately testifying falsely, it is shown beyond all question that she could have seen the approach of the car if she had carefully looked up the street before she attempted to cross in front of the horse. There was nothing to prevent her seeing it when she stopped at the gutter as she said she did, and when she stopped the second time, which was after she had passed in front of the horse and was about in line with the wheels of the wagon, one of her witnesses, in answer to the question why she did not call to the child, said: "Because I thought the child saw the automobile. I didn't see any use calling to her; she stopped and I supposed that's what she stopped for. Q. You supposed when she stopped she saw it? A. I thought she would see it; I didn't see why not." The occupants of Dr. Likes' car saw the little girl before she started into the street. There was therefore no reason why the plaintiff could not have seen the car coming, if she carefully looked. But she says that after she went beyond the horse she stopped again and looked up the street and did not see anything coming and then started across the street. As the length of the horse and wagon was about eighteen or twenty feet, it is difficult to understand why she did not see the car if she looked from the place and at the time she said she looked. The testimony shows that she was struck by the right front wheel of the car, and if she was about even with the left wheels of the wagon when she looked she only had a few feet to go before she would have been beyond where she

was struck. There is therefore much to be said in favor of the appellee that she ran or, as some of the witnesses say, "darted out" from the pavement just as the automobile came by and that it was in that way she was injured.

There is nothing to show negligence in the chauffeur turning his car towards the west curb, which would be to his right, as stated by Mr. Meyers. His statement that "if he had gone straight ahead instead of making the turn, he would not have hit the child at all" is simply his opinion, and we must say such an opinion is not based on the facts, if other parts of his testimony are to be accepted as true. He was asked how close the automobile was when it passed the wagon, and replied, "six to twelve inches." and Again: "Q. You mean to say the automobile grazed that wagon within six to twelve inches? A. Something like that, yes. Q. Are you confident of that? A. Yes, sir." If that be true it was physically impossible for the automobile to have turned to the right and have struck the plaintiff with the right wheel where this accident occurred. The chauffeur said that as soon as he saw the child he veered to the left, trying to avoid striking her, which would of course be the natural thing for him to do after he saw her. Mr. Landes, one of the plaintiff's witnesses, who was on the opposite side of the street, testified that "After the automobile cleared the wagon it bore to the right and it came within five or six feet of the gutter. I guess the little girl after she was struck was lying 4 or 5 feet back of the automobile. I did not see the child start to come across the street. I did not see her until after she was run over." He also said, "it cleared the wagon not very far, about several feet." But if he was correct, surely it could not be said that the chauffeur was negligent because after he cleared the wagon he turned to the right. The chauffeur had no reason to suppose that this little child or anyone else would be in the way. Even if Mr. Meyers could be said to be correct in his version, what we have just said would be applicable. If it be admitted that if when the chauffeur

saw the child he had gone ahead instead of veering to the side, he might have avoided the accident, how can that be said to be evidence of negligence? If he thought that by turning the car from the course he was running he might avoid striking the child, he could not have been censured for doing so, and if the child then changed her course and got in the way of the machine it would not have been negligence on his part simply because he had changed the course he was originally running.

We are then of the opinion that there was no occasion for qualifying this prayer by submitting in it any of the reasons suggested by the appellant to show that the chauffeur could have avoided the accident, further than it was qualified by the plaintiff's prayers which were granted. It tersely but fairly presented the defendant's theory of how the accident happened, and we do not think that under the circumstances it was calculated to mislead the jury.

The criticism of the defendant's third prayer is very technical. That prayer is as follows: "The Court instructs the jury that the mere happening of the accident complained of raises no presumption of negligence on the part of the servant of the defendant operating the automobile referred to in the evidence, but the burden is upon the plaintiff to establish by a fair preponderance of affirmative evidence that negligence on the part of said servant caused said accident and if the minds of the jury are left by the evidence in a state of even balance as to the existence of such negligence, then the verdict of the jury must be for the defendant."

Objection is made to the use of the word "establish" instead of "prove." The cases of *Ohlendorf* v. *Kanne,* 66 Md. 495, 500; *Barabasz* v. *Kabat,* 86 Md. 23, and *Laubheimer* v. *Naill,* 88 Md. 174, sufficiently answer that. Then the statement that "the burden is on the plaintiff to establish by affirmative evidence," is objected to. That is met by the case of *B. & O. R. R. Co.* v. *State, use of Savington,* 71 Md. 590, where on page 599 CHIEF JUDGE ALVEY said: "It is

incumbent upon the plaintiff to give some *affirmative evidence* of the existence of such negligence." That has been approved in *Riley* v. *N. Y. P. & N. R. R. Co.,* 90 Md. 53, and *B. & O. R. R. Co.* v. *Black,* 107 Md. 642. Nor can we agree with the appellant that this prayer prevented the jury from considering any evidence reflecting upon the negligence of the defendant, except that offered by the plaintiff. The burden was undoubtedly on the plaintiff to establish by a preponderance of evidence that the negligence on the part of the chauffeur caused the accident. That might be established by witnesses offered by the defendant, but the burden was nevertheless on the plaintiff to establish it. In *P. & B. W. R. R. Co.* v. *Hand,* 101 Md. 233, the objectionable prayer said that the fact of contributory negligence "must be *proved by the defendant,"* although the law is that if the plaintiff's evidence discloses contributory negligence he is not entitled to recover. So also in *United Railways* v. *Riley,* 109 Md. 327, the prayer was "unless the defendant show," etc. If such an expression as that used in this prayer now under consideration could not be used, it would be difficult to submit a proper prayer on the burden of proof. What we have said above ought to be sufficient to show that the use of the expression "affirmative evidence" does not make the prayer objectionable. The opinion of the Court in *Cooper* v. *Holmes,* 71 Md. 20, sufficiently points out why it was thought that the expression "positive testimony" was improper to relieve us of any further discussion of that. We see no reversible error in granting the third prayer.

The fourth instructed the jury "that under all the evidence in this case there is nothing in Article 1, Section 4 of the Ordinance of 1908 (Ordinance of the Mayor, etc., of Baltimore No. 188, approved July 10, 1908), referred to in the evidence, in relation to the rules of the road which required the driver of the defendant's automobile to give plainly visible or audible signal when approaching the place where the accident occurred." That section is as follows: "Section 4. Turning and Starting:—The driver or person having charge

of any vehicle before turning the corner of any street or turning out or starting from or stopping at the kerb line of any street, shall first see that there is sufficient space free from other vehicles so that such turn, stop or start may be safely made, and shall then give a plainly visible or audible signal."

As the driver was not turning the corner of a street or turning out or starting from the kerb line or stopping at that line, it is difficult to understand what that section has to do with the facts of this case. If it meant that whenever one automobile passes another the driver must blow the horn it would doubtless have said so, but there is nothing in this section to require that. It does not require the driver to give an *audible* signal, but he may give *"a plainly visible"* one *or an audible* one.

There was no reversible error in granting either of the prayers of the defendant which were granted, and hence it is unnecessary to consider the fifth and sixth, as suggested by the appellee. Nor do we find any error in the rulings on the admissibility of evidence. The question in the first bill of exceptions was properly held to be inadmissible. It was not necessary to look through the Smith car or through the grocery wagon to see the little girl and the witness did not pretend that he had looked through either. The rulings in the second and third bills of exception were also right, but we will not further prolong this opinion by discussing them.

The injuries sustained by this little girl were such as to arouse the sympathies of every one knowing of them, as she was undoubtedly seriously and painfully injured. But her case was submitted to the jury as favorably for her as under the law she could ask, and while we do not review their action, we can at least say that there was abundant testimony in the record to justify the verdict of the jury. The judgment must be affirmed.

*Judgment affirmed, with costs to the appellee.*