HALL N. MILES, JR., *v.* STATE, USE OF ALFRED P. WISTLING ET AL.

[No. 51, January Term, 1938.]

*Decided April 27th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*V. Calvin Trice,* for the appellant.

*Frederick W. C. Webb,* with whom were *Woodcock, Webb, Bounds & Travers* on the brief, for the appellees.

PARKE, J., delivered the opinion of the Court.

The appeal on this record is by Hall N. Miles, Jr., the driver of an automobile which struck Alfred P. Wistling, Jr., a youth, on the night of February 9th, 1937, and inflicted injuries of which the victim died two days later,

without having regained consciousness. An action was brought by the State of Maryland for the use of his parents, and a verdict in their favor was duly rendered, and a judgment was extended. The errors assigned are the failure of the court to sustain the objections of the defendant to certain offers of testimony, and to grant the prayer of the defendant to take the case from the jury on the ground that no negligence had been shown on the part of the defendant.

The scene of the accident was from 400 to 450 feet west of the intersection of Main Street and Somerset Avenue, two public highways of the Town of Crisfield. Main Street runs east and west and Somerset Avenue north and south. On the north side of Main Street there is a cement sidewalk, with a bounding vertical curb of four inches in height. This sidewalk is slightly more than six feet in width, and from its outer curb line to the sidewalk of similar width on the south side of Main Street the highway is one inch short of twenty-five feet in width. The sidewalk on the south side does not have a curb, and is on a level with the surface of the street. On the north side of the street, in the immediate proximity of the accident, there is a residence in which Miss Hall and Miss Muir live, and between their home and the next residence to the west is an alley-way or lane. A few feet east of this alley and in front of the western part of the front of the Hall-Muir house is a pole, from which projects an arm from which a municipal electric light lamp of about 100 candle power is suspended over the center of Main Street. Opposite the Hall-Muir home and on the south side of Main Street is a boarding house. On the night of the accident two automobiles were parked in front of the boarding house. These automobiles were faced east, and their right wheels were on the sidewalk, about two feet from the southern line of the highway. As the evidence is that the automobiles are six feet in width, the position of these automobiles left a space of over twenty feet clearance between these automobiles and the curb on the north margin of the street. The

accident happened about half past ten o'clock on a dark, foggy, and rainy night.

About these facts there is no substantial controversy. There is, however, conflict in material testimony in reference to what was the cause of the accident. Since the prayer on the part of the defendant is a demurrer to the legal sufficiency of the evidence to establish a cause of action, all the facts, and the reasonable inferences directly deducible from these facts, consistent with a right of recovery, must first be taken to be true, and then be found legally insufficient to constitute a right of action, before the refusal of the prayer of the defendant to take the case from the jury can be declared to be in error.

The testimony offered on the part of the plaintiff tended to prove that Alfred P. Wistling, Jr., the infant son of the parents for whose use the action has been brought, (Code, art. 67, secs. 1-4, as amended by Laws 1929, ch. 570, sec. 3) had been at a meeting of the Boy Scouts in a hall on east Main Street, in Crisfield, and had started to return home on his bicycle at about half past ten o'clock. He was clad in his uniform of a Boy Scout, and wore the hat of the organization as he rode against the wind westward on Main Street. Eugene Mills, a youth of twelve years and a friend of the victim, was also on his way home from the meeting, and he testified that he first observed Wistling, after the assembly ended, when the witness was about to enter the intersection of the two highways in the line of the sidewalk on the south side of Main Street. Wistling was then seen pedaling slowly ahead to his right of the center line of Main Street. While at the crossing, Mills noticed two boys ahead of him on the same sidewalk and, in order to catch up with these friends, he ran along the sidewalk on the south side of Main Street until he was abreast of Wistling on his bicycle on the highway, and had overtaken the two boys on the sidewalk. At this point, Mills had nearly reached the boarding house on the south side of the street, and not far from the line of the front of

the first or easternmost automobile on the sidewalk and in front of the boarding house.

Before walking further, Mills looked and saw the bicyclist Wistling riding straight ahead, his wheel to his right of the center of Main Street, about six feet from the curb on the north side of Main Street. Mills lost sight of Wistling because the body of the first automobile came between them, as Mills walked ahead with his companions. Before Mills had passed the two automobiles, he heard the noise of the collision, and he ran out between the two parked automobiles; raced across the street to the north side, and what he found was that "Alfred was laying down; his head was on the curb a little bit and he was still straddle his wheel." The body of the injured boy was about four and a half feet from the pole which supported the arm from which the electric light bulb was suspended. The position of the bicycle indicated that it had been headed towards the west. As Mills went across the street, an automobile, which was moving towards the east and had hit the dead boy, had stopped a short distance beyond the front of the easternmost of the two parked automobiles.

There was also other testimony on the part of the plaintiff which tended to show that three ladies, who were playing cards in the Hall-Muir house, heard the crash, and, fearing an accident, arose and one looked through the front window, noticed an object lying on the street, and then the three went out on the front porch and looked across the intervening space of from twenty to twenty-five feet and observed, under the burning electric street light, something like a bundle of clothes near the curb, and nearby lay the bicycle. They saw, also, the two parked automobiles on the opposite side of the street. The testimony would indicate that the accident had occurred within a few seconds after Mills last saw the bicyclist pedaling, and within the length of the two parked automobiles.

The plaintiff further offered testimony which tended to show that the fatally injured boy had been struck by

an automobile which was driven by the defendant, who was a young man in his twentieth year. He was accompanied by two other young men, one of whom rode with him on the front seat and the other on the rear seat of the automobile. Declarations of the defendant were introduced in evidence to the effect that he did not remember to have seen any cars parked on the south side of Main Street at the time and place of the accident; that he had not seen the boy before the accident; and that the left front fender of the automobile had been damaged by the collision. The officer who examined the defendant's automobile in the accident testified that there was a narrow, vertical streak, four inches from the left end of the front bumper, which was not damaged except for dulling the finish where it had been rubbed or scraped or had struck something. There was a dent in the left front fender which was about sixteen inches long, from six to eight inches wide, and two to three inches deep. The mark was to the top and left of the center of the fender, and began about eighteen inches from the front end and extended back parallel with the ground.

According to the defendant's statement at the inquest, the boy was still astride his bicycle after he had fallen. He was partially in the street and partially on the curb. The boy killed was in his fifteenth year. As a result of the accident, both sides of his skull were fractured, and the deeper dent was on the left. The left femur was fractured and the leg turned or twisted. There were a few scratches and abrasions on his face and arms. He was unconscious from the time of the injury until his death.

The bicycle after the accident had a flat rear tire, but the front tire was not deflated. The fender of the rear wheel was mashed in and broken; the left pedal was bent; the rod holding the front mud-guard and a spoke of the front wheel were broken, and the lower part of the mud-guard of the front wheel was bent and broken. There is no affirmative evidence that the bicycle carried a light at the time of the accident, but there is testimony that the

officer who examined the bicycle after the accident found none, and he stated that the only equipment he observed was a small red device on the rear of the bicycle. As the officer's examination was made shortly after the accident, and as there is nothing to indicate any parts of the bicycle had been removed or any change had been made in its condition, the inference is that the bicycle had no light as contemplated by subsection 3 (f) of section 193 of article 56 of the Code, as amended by Laws 1935, ch. 61. *Matthews v. Pohlmyer*, 167 Md. 689, 176 A. 479; *Gittings v. Schenuit*, 122 Md. 282, 90 A. 51.

After all the plaintiff's testimony with reference to the accident and its cause, the plaintiff called the defendant to testify to his name, age, residence, and to the facts that he was driving the automobile which collided with the boy, and that he was accompanied by two men, with their names and positions in the automobile. He was not examined further nor was there cross-examination. He gave no other testimony, as he was not called as a witness for the defense, nor did his companions testify in the case. The only witness produced by the defendant was Marvin R. Purnell. This witness was driving an automobile south on Somerset Avenue and had turned west into Main Street on the night of the accident. He was accompanied by Norman Pepler, who did not testify. The testimony of Purnell tended to show that, as he continued to drive westward on Main Street, he observed the approach of the lights of the defendant's automobile before it had reached the two automobiles, which were parked on the south side of Main Street and opposite the place of the accident; and that at no time did the defendant's approaching automobile leave its position to the right of the center line of the street, but that, noticing by the lights of defendant's automobile that its speed was being reduced, he inferred something had happened and lessened the speed at which he was traveling, and, after the defendant's automobile and his own had passed each other in opposite directions, both automobiles stopped. The witness got out, and saw the

boy "lying into the gutter. He was tangled up into his wheel." The witness also stated that he had not seen the boy at any time before he stopped, nor did he observe any object in front of the lights of the defendant's automobile.

The plaintiff offered but one prayer, which went to the measure of damages and their apportionment in the event the jury should find for the plaintiff. This prayer was conceded. The defendant's second prayer was also conceded, and his third and fourth prayers were granted. The only prayer rejected was the defendant's first prayer, which was a demurrer to the legal sufficiency of the evidence to entitle the plaintiff to recover.

The conceded and granted prayers on the part of the defendant fully presented his defense to the jury, including the issue of contributory negligence on the part of the bicyclist, and the effect of his failure to carry a light in accordance with the statute, if such failure had contributed directly to the accident. So, the defendant has no ground of complaint on the prayers, unless the failure of the court to take the case away from the jury by granting the defendant's first prayer is error.

No presumption of negligence is raised merely because of an injury to a boy riding a bicycle which was caused by the driver of the automobile coming into collision with the bicyclist. The question of the negligence of the respective parties is generally an issue for the jury. So, if the driver of an automobile leaves his lane of travel and moves across the center line of the highway without any apparent cause, and thus comes into collision with a bicycle which is being ridden in an opposite direction on the rider's right side of the highway, where the bicyclist is properly traveling in the exercise of reasonable care and caution, except that the bicycle is not equipped with any of the lights required by statute, the question of negligence of the respective parties is for the jury, unless the noncompliance by the bicycle rider with the statutory provisions with respect to the carrying of lights on the bicycle appears from the evidence

to have contributed proximately to the collision. *Neilson v. Walker*, 105 Cal. App. 23, 286 P. 1091; *Nelson v. Seiler*, 154 Md. 63, 76, 77, 139 A. 564; *Williams v. State*, 161 Md. 39, 54, 55, 155 A. 339; *Standard Oil Co. v. Stern*, 167 Md. 211, 214, 215, 173 A. 205; *Gittings v. Schenuit*, 122 Md. 282, 285, 90 A. 51; *Kelly v. Huber Baking Co.*, 145 Md. 321, 331, 334, 335, 125 A. 782.

Although a fact to be considered in determining whether, at the happening of the accident, the bicyclist acted with reasonable care, the mere concurrence of his violation of the statute, with respect to the carrying of a light on the bicycle, with the accident in point of time does not necessarily render the violation a proximate and contributing cause of the injury. 5 *Amer. Juris.*, secs. 409, 412, 426. To take the case from the jury on this ground, the direct and proximate causal connection between the accident and the violation of the statutory traffic regulation in respect of the carrying of lights must be a necessary inference from decisive facts and circumstances which do not require their ascertainment by the jury. The relationship between the accident and the breach of the regulation is, however, generally a question of fact for the jury to find from all the pertinent facts and circumstances. In the instant case the question was rightly left for the resolution of the jury under appropriate instructions. The jury found that this connection of cause and effect did not exist. There was sufficient testimony, if believed, to support this determination. The jury could have drawn the rational conclusion from this testimony that the absence of a light on the bicycle was not a proximate contributing cause, but that the accident occurred within the range of the illumination of a street light which rendered the boy and his bicycle visible to the defendant in time to avert the collision if, in the exercise of reasonable prudence and care under the unfavorable weather conditions, the defendant had kept his automobile under reasonably prudent control and had looked ahead when he, without any traffic or other cause, left his proper side of the high-

way and entered the right of way of travelers approaching in the opposite direction and struck the bicycle, while its rider was proceeding carefully about six feet from the curb on the north side of the street, and near the pole which carried the device to which the street light was affixed. In short, the jury found, and there was legally sufficient evidence to support their verdict, that the absence of the light on the bicycle did not prevent its being obvious. *Sullivan v. Smith,* 123 Md. 546, 556, 91 A. 456; *Webb-Pepploe v. Cooper,* 159 Md. 426, 430, 431, 151 A. 235; *Gitomir v. United Rys. & Electric Co.,* 157 Md. 464, 467, 146 A. 279. Under the facts and circumstances of this record, all the questions of negligence were for the jury, and the court was not in error in its action on the defendant's first prayer.

The first thirty-one bills of exceptions present rulings of the court on the testimony. A number of these were merely preliminary, formal inquiries and, so, present no material question. Others were statements made to a policeman by the defendant and by his father in the presence of the defendant. These included statements by the defendant that he was driving the automobile; that certain persons were in the automobile and how they sat; that he neither saw the parked automobiles nor the boy before the accident; that the left front fender of his car had been damaged by the collision; and that the boy was astride of his bicycle after he had fallen, and he lay partly in the street and partly on the curb. The officer further testified that the defendant identified for him the automobile, and that the defendant's father, in the presence of the defendant, pointed out to the officer the marks on the automobile as a result of the accident, and these marks the officer was permitted to describe.

In these rulings no reversible error is found. So far as they were not mere repetitions of testimony offered by the plaintiff and given in evidence without objection, the bills of exceptions were chiefly admissions or declarations against interest which were either made directly

by the defendant or by his father in his presence and with his acquiescence. After the identification of the automobile by the defendant, and his silent assent to his father's statement of the origin of the marks on the automobile, the officer's description of these marks was admissible. The court sees no error in these rulings, which are well within established principles governing the admission of statements against interest. *Wigmore on Evidence* (2nd Ed.) secs. 1048, 1053, 1057, 1069, 1071.

Finding no ground for reversal, the judgment will be affirmed.

*Judgment affirmed, with costs to appellee.*