Beverly Ann SWEENEY, Infant, by her father and next friend, Carl L. Sweeney, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 6903.

United States District Court D. Maryland, Civil Division.

Nov. 30, 1954.

John J. Ghinger, Jr., and Weinberg & Green, Baltimore, Md., for plaintiff.

George Cochran Doub, U. S. Atty., and Herbert F. Murray, Asst. U. S. Atty., Baltimore, Md., for defendant.

THOMSEN, District Judge.

The principal question involved in this action under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., is whether Sergeant Warrenfeltz, driving a government automobile up a public alley in Hagerstown, Md., should have sounded his horn or slowed down even more than he did before passing an open door in a stable facing on the alley.

### Findings of Fact

The alley, running south from East Franklin Street, east of Mulberry Street, in Hagerstown, Md., is a public alley, and has a concrete pavement 8 ft. wide. At the place where the accident occurred, there is a dirt shoulder 2 ft. wide east of the pavement, and a dirt shoulder 3 ft. 2 in. wide west of the pavement. On the eastern half of the east shoulder there is a bench, and a telephone or electric pole, which leans slightly toward the alley. Immediately west of the west shoulder is a stable, with two doors on the alley; the southern door, a rough board affair, 35 in. wide, has hinges on the south side, and opens out. The floor of the stable is about 10 in. above the shoulder of the alley.

On September 3, 1952, shortly after 1:30 p. m., plaintiff, then nearly 8 years old, went with her friend, Joyce Stoddard, aged 10 years, into the stable to visit the horses. Joyce opened the southern door to an angle of 90°, so that it was about 3 in. from the edge of the pavement, and left it in that position when the children entered the stable. They stayed there for about 15 minutes, when plaintiff decided to leave the stable. I find that she neither leaped out running, as defendant claims, nor stopped at the doorway, as she claims, but that she proceeded with the normal velocity of a 7 or 8 year old. I find that she looked to her left (north) as she stepped or

jumped down to the level of the shoulder, but that she did not look around the door nor make any effort to move the door so that she could look more easily to her right (south) before going out onto the paved portion of the alley.

Just before plaintiff left the stable, Sergeant Warrenfeltz, USAF, driving a Chevrolet 4-door sedan on government business, turned east off Mulberry St. onto an alley running east and west, a short distance south of the stable, then turned left onto the alley with the 8 ft. pavement, intending to proceed north to Franklin St. and look for a place to park. As the Sergeant turned left onto the alley he noticed that the stable door was open, but saw no one going in or out of the door, no one in the alley, and no feet or legs in the 11 inch space between the door and the shoulder of the alley. He continued to look ahead, but saw nothing different until the front of his car was just about even with the stable door. I find that the Sergeant started up the alley at a speed of about 15 m. p. h. and slowed down to not over 10 m. p. h. as he approached the door. He did not sound his horn. His car was 6 ft. or so wide; he was driving on the concrete pavement; and the left side of the car was not more than 1 ft. from the outer part of the stable door, which was still open at a 90° angle. When the front of his car was about even with the stable door, the plaintiff suddenly emerged. The point of impact was on the left front bumper, about 18 to 20 in. in from the left side of the car. The Sergeant applied his brakes as quickly as he could, and brought the car to a stop, with the front of the car about 10 ft. north of the stable door, and the left rear door of the car even with the stable door, so that the car door could not be opened until the stable door was pushed further open. The plaintiff was pushed, thrown or carried in front of the car, and fell about 1 ft. in front of the car when it stopped. She had sustained a fracture of the right femur. There was no mark on the car.

I find as a fact that there were no skid marks visible on the concrete when

Sergeant Warrenfeltz, Sergeant Eckels, his superior, and Officer Smith, of the Hagerstown Police Motor Patrol, visited the scene of the accident about one-half hour later.

The fractured femur required plaintiff to remain in the hospital 50 days, in traction most of the time. For a month after she returned home she had to be carried about, but in January, four months after the accident, she returned to school, and was promoted with her class. She was unable to play games and dance that school year, but in the fall returned to dancing school for lessons in tap and ballet dancing. Her surgeon says that she will have no permanent disability, except a scar on the right shin—now hidden by the top of her bobby sock—caused by a traction ulcer.

### Conclusions of Law.

The fact that Sergeant Warrenfeltz stopped within 10 feet after he saw the plaintiff shows that his speed was not excessive and that he had his car under good control. "If a child darts out in front of an apporaching automobile when the driver is going at a reasonable rate of speed and obeying the rules of the road, so that even with the exercise of due diligence he is unable to avoid running into the child, he is not liable for any injuries the child may sustain; * *." Miller v. Graff, 196 Md. 609, 616, 78 A.2d 220, 223; Cocco v. Lissau, 202 Md. 196, 200, 95 A.2d 857.

But plaintiff's attorney argues with force and ability that Sergeant Warrenfeltz should have sounded his horn before he passed the open door. Article 66½, Sec. 257 of the Annotated Code of Maryland, 1951 Edition, provides:

"(Horns and Warning Devices.) (a) Every motor vehicle when operated upon a highway shall be equipped with a horn in good working order and capable of emitting sound audible under normal conditions from a distance of not less than 200 feet * * *. The driver of a motor vehicle shall when reasonably necessary to insure safe operation

give audible warning with his horn, but shall not otherwise use such horn when upon a highway."

Whether blowing one's horn is "reasonably necessary to insure safe operation" depends upon the circumstances of each case. An important circumstance in this case is that the accident happened between street crossings, in a public alley; so the automobile had the right of way; Sec. 201 of said Article 66½; Slaysman v. Gerst, 159 Md. 292, 300, 150 A. 728; and the driver had no reason to anticipate that anyone would attempt to cross the alley at that point without looking.

The Court of Appeals of Maryland suggested no duty on the truck driver to sound his horn in the case of Maas v. Sevick, 179 Md. 491, 20 A.2d 159, where the injured child had come out of an open gate into a narrow alley. See also Sullivan v. Smith, 123 Md. 546, 554, 91 A. 456. Of course, motorists should reduce their speed and use caution whenever they see children in the street or have reason to expect that children will run across the highway in front of them; Miller v. Graff, supra; Stafford v. Zake, 179 Md. 460, 20 A.2d 144. Such caution may include the duty to sound a horn.

I find no such duty here, where the driver was driving so slowly, the door was standing open, not being opened, and there was no one in the alley, no evidence that anyone was about to leave the stable, and no reason to expect that anyone would emerge onto the narrow alley without looking to see if a vehicle was approaching. Trucks and automobiles proceeding through alleys are not required to sound their horns every time they approach an open door or gate giving onto the alley. I conclude that Sergeant Warrenfeltz was not negligent.

A seven year old child may be guilty of contributory negligence. Zulver v. Roberts, 162 Md. 636, 641, 161 A. 9, and after two years in school a child should know that it is careless to enter an alley without looking both ways. But since I have found that the driver was not negligent, it is unnecessary to pass on the question of contributory negligence.

Let judgment be entered for the defendant.