ROBERTSON ET AL. *v.* STATE, USE OF MEYER ET UX.

ROBERTSON ET AL. *v.* MEYER, ADMINISTRATOR

[No. 191, September Term, 1957.]

*Decided March 26, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*George D. Solter,* with whom were *Due, Nickerson, Whiteford & Taylor* on the brief, for appellants.

*W. Lee Harrison,* with whom was *Richard C. Murray* on the brief, for appellees.

HENDERSON, J., delivered the opinion of the Court.

The parents of a seven-year old boy, Thomas D. Meyer, who was hit by a truck on April 23, 1954, and died on August 29, 1954, as a result of his injuries, recovered judgments on jury verdicts against the driver of the truck, the owner, and

the hirer, a partnership trading as Hercules Block Company. The appellants challenge the refusal of motions for directed verdict and motions for judgment n. o. v. . No question is raised as to agency of the driver. The only questions raised are as to the sufficiency of the evidence of primary negligence, and whether the court's charge to the jury fairly and adequately covered the case.

The accident occurred at about 12:50 P. M. on Norris Lane, four hundred feet east of North Point Boulevard in Baltimore County. The weather was clear, and the road dry, level and straight. The speed limit is thirty miles per hour. The road is macadam, nineteen feet wide, with a gravel shoulder on each side, eighteen inches in width, and with grassy ditches on each side beyond the shoulders. The area is not closely built up. Along the road, which runs east and west, there are some old-style detached frame dwellings, one on the south side of Norris Lane, owned by the parents of the child, and one on the north, owned by the Taylorson family, slightly to the east, although the houses face one another. In front of the Taylorson house there is a hedge about three or four feet high behind the ditch along the road, with an opening for a walkway. Mrs. Meyer testified that she had permitted Tommy, the boy, to go across the road to play with the Taylorson child, and had taken him to the edge of the road to watch him cross. She told him to let her know when he was ready to come home and she would "get him across". She sat on her front porch, drying her hair. Some time later, she saw him come down the walk and she stood up "so I could tell him when to come across, but I didn't have a chance. * * * He was standing at the edge of the walk, waiting for me to tell him when to come across, * * * on the shoulder, right at the edge of the walk." The truck, coming from her left on the north side of the road passed between her and the boy and cut off her view. When the truck passed, the boy wasn't there. She ran down and found the boy lying in the road in front of the truck, which had swerved to the right-hand or south side of the road. She was positive that the boy was standing still and not moving when she last saw him, just before the accident. Earl Meyer,

seventeen years old, saw his brother, Tommy, just before the accident. He was "standing there, looking up and down." He heard "a rubbing noise" and saw the truck standing there.

Sergeant Sigler, who investigated the accident, testified that when he reached the scene the boy was lying about ten feet in front of the truck, south of the center of the road. His right leg had a severe fracture, and the point of impact had been on the left front bumper of the truck. The truck left skid marks seventeen feet in length; he couldn't recall whether they were straight or not. He thought the truck was standing in the eastbound lane; there was room for the ambulance to pass to its left. There were no parked vehicles along the road.

Green, the driver of the truck, testified he was driving east in a two-ton, stake body truck about seven feet wide, at about twenty-eight miles per hour. He was "in the middle of the road * * * about 3½ feet from the right hand side". When he was about fifty feet away, he saw a puppy or small dog lying on the right-hand side of the road, about five feet west of the Meyer house, and "moving". It "seemed to start across the road and I pulled to my left to keep from hitting the dog, and just about the time I got even with the walkway of the house is when I noticed the boy run out in front of me, or the shadow of the boy, seemed to be in the act of running. As I pulled back I was applying my brakes, and at the same time is when I heard this 'Bang!' and slid to a stop." He thought the truck was "on an angle" when it stopped, the right rear wheel in the center of the road. He "was noticing the dog, trying to keep from hitting the dog. When I turned back from the right I noticed the figure of the boy coming out from the driveway. It seemed to be running." If he had seen the boy in time "I probably would not have hit the boy."

Mrs. Meyer testified that the Taylorsons had a dog. It was "standing alongside of Tommy" just before the accident. There were no other dogs around. On cross-examination, and when confronted with her pre-trial deposition in which she had said she "didn't see the dog when Tommy was standing there", she testified that the dog was always playing with

the children, and that "the dog was by Tommy, somewhere around where Tommy was". On redirect examination she reiterated that the dog was "on the Taylorson's side of the road." Officer Sigler testified that the driver, Green, told him just after the accident that "he had seen this dog, and the child apparently behind the dog. * * * It's been three years ago, and as near as I can recollect his story was he thought it came from the right, and he cut his truck a little to the left to avoid the dog and then he realized he had struck something else. * * * According to the transcript at the Edgemere Station, he thought the child and the dog had come from the right. He also stated at the hospital later, then he decided the child had come from the left."

The appellant argues that there was no evidence that Green's driving in the middle of the road before the accident was the proximate cause of the accident, that there was no evidence that he was driving at an excessive speed under the circumstances, or that he was driving recklessly. If we assume that the appellant is correct on all of these points, it does not follow that he was free from negligence. Viewing the evidence in the light most favorable to the plaintiffs, it permits the inference that Tommy was standing still upon the shoulder and did not run in front of the truck before he was struck. There is no force in the contention that this is rebutted by the physical facts. If the truck were driven or swerved to the left, and swerved back to the right, it is entirely possible that the impact occurred on the shoulder and threw him across the center. The swerve to the left, unexplained, would be evidence of negligence. See *Greenbaum v. Costa,* 137 Md. 524; *Miles v. State,* 174 Md. 292; *Garozynski v. Daniel,* 190 Md. 1, and *Fogle v. Phillips,* 191 Md. 114. *Lenehan v. Nicholson,* 214 Md. 414, is clearly distinguishable. There the evidence that the boy darted in front of the car, while it was on its proper side, was uncontradicted. It could also be inferred from the evidence in the instant case, that the driver could have seen the boy, standing on the shoulder in front of the hedge in a place of comparative safety and in plain view, and could have avoided striking him if he had seen him. Of course, the driver sought to avoid the

obvious inference of negligence on the ground that he acted in an emergency, created by the action of the dog, as an excuse for apparent negligence. *Sonnenburg v. Monumental Tours,* 198 Md. 227, 238. But the existence of the emergency was not admitted, and could be established only by a finding of the jury. *Newman v. Stocker,* 161 Md. 552, 555; *Harner v. Russell,* 185 Md. 519, 527; *Baker v. Shettle,* 194 Md. 666, 671. See also *Notes* 79 *A. L. R.* 1277 and 111 *A. L. R.* 1019; *Restatements, Torts,* § 296; *Becker v. Beir,* 89 N. Y. S. 2d 536. There was evidence that the dog was not on the south side of the road, but was alongside or near the boy. We think there was sufficient evidence of primary negligence to take the case to the jury. No objection is pressed as to the court's charge covering contributory negligence, or the refusal of the demurrer prayer on this point.

The appellants contend that the court gave an erroneous resume of the facts regarding the position of the dog, when he referred to Mrs. Meyer's testimony that she "saw a dog standing alongside of Tommy the last time she saw him." The court pointed out that there was a conflict in the evidence as to where the dog was, summarized the testimony of Green as to the dog, and told the jury that they were the final arbiters of the facts, and that they should rely on their own recollection and were not limited to any facts he mentioned. We find no error. The issue as to whether the dog was on the north or south side of the road was fairly presented, and the variation in Mrs. Meyer's testimony as to whether the dog was "alongside" Tommy or "around where Tommy was" is not substantial. Of course, the statement in her pre-trial deposition that she did not see the dog at all, only goes to her credibility and the weight of the evidence. We also find no basis for the contention that the court failed to cover adequately the burden of proof.

Finally, the appellants contend that the court erred in refusing its prayer as to an emergency created by the action of the dog. There was no objection to the court's charge on the point, other than the "refusal to grant its number two request, which is an emergency prayer as applied to the defendant, Green, and his conduct should the jury believe that the

dog attempted to cross the road from right to left at the time or immediately prior to the collision with the child."

The requested prayer read as follows: "The Defendants respectfully request the Court to instruct the Jury that the uncontradicted evidence shows that there was a small dog in the vicinity of the accident prior to, at the time of and after the accident and that if the Jury shall find that the said dog was on the right-hand side of Norris Lane and made a movement as if to cross from south to north at the moment the truck operated by Green reached the area between the Meyer and Taylorson homes, that the Defendant Green cut his truck to the left to avoid striking the dog and that he did not see Thomas Meyer at that time, and that as a result of such movement by the dog Green was confronted with an emergency, then Green should not be held to the same accuracy of judgment as would be required under ordinary circumstances and even though some other course of action might have been wiser in the light of the circumstances that developed thereafter, he is not responsible for following a less wise course of action so long as he acted as a reasonably prudent person would under similar circumstances, and if the Jury shall so find, the verdict must be in favor of the Defendants in each case." The prayer incorporates certain language of this Court, used in *Burhans v. Burhans,* 159 Md. 370, where the facts were undisputed and it was held that there was no evidence of negligence under the circumstances. But see *Consol. Gas, etc., Co. v. O'Neill,* 175 Md. 47, 52; *Baker v. Shettle,* 194 Md. 666, 671; *Williams v. Dawidowicz,* 209 Md. 77, 83; and *Baltimore Transit Company v. Prinz,* 215 Md. 398.

We think the prayer was properly refused for several reasons. It assumed that the dog made a movement as if to cross "at the moment the truck * * * reached the area between the Meyer and Taylorson homes," whereas the testimony of Green was that he saw the dog moving when he was fifty feet away from it, and a still greater distance from the two houses. He said it "seemed to start", but he did not say that it ever actually reached the road. Thus there was no evidence that it was actually necessary to pull to the left,

and he did not make any effort to stop at that time. Also, the fact that he did not see the boy, on which the prayer is predicated, might in itself be evidence of negligence, as we have pointed out. A finding of emergency would not necessarily excuse his failure to see, or to use reasonable means to avoid striking the boy, even if it involved striking the small dog. Cf. *Consol. Gas, etc., Co. v. O'Neill, supra.* We think the prayer is also confusing, in that it is not clear what the phrase "if the jury shall so find" refers to, and it omits entirely a finding that the emergency was the cause of the accident.

The trial court referred to the conflicting testimony as to where the dog was, and to the driver's testimony that he pulled to his left to avoid striking it. He told the ·jury that in order to find for the plaintiffs they must first find that there was negligence on the part of Green, under "all the circumstances and conditions", and defined ordinary care as "what normal people would do under the same or existing conditions". He also explained the necessity of finding that the negligence, if any, was the proximate cause of the accident, and defined proximate cause. True, he did not use the word "emergency", but, as we have noted, there was no objection to the charge, as such, but only to the refusal of the defective prayer. In *Fogle v. Phillips, supra,* p. 119, Chief Judge Marbury, for the Court, said: "The real question was whether the defendant, under *all* the circumstances, was negligent, * * *. He requested no instruction on the duty of a driver when confronted with an emergency. That is quite different from an instruction concerning an unavoidable accident. An emergency does not necessarily render an ensuing accident unavoidable. But from defendant's own testimony in this case, it does not appear that any emergency existed. The sole question for the jury, therefore, was the negligence *vel non* of the defendant." In *Garozynski v. Daniel, supra,* p. 5, we said: "The court's charge fully covered, although in different words, the issue as to defendant's negligence, accepting his testimony that he was confronted by an emergency." In *Baker v. Shettle, supra,* p. 671, we said: "* * * the rule in an emergency is that one must act as a reasonably

prudent man would act in view of the emergency." The position of the dog, its causal relation to the accident, if any, and whether the driver acted as a reasonably prudent man would act under the circumstances, were questions properly submitted to the jury, and we find no reversible error in the court's charge under the circumstances.

*Judgments affirmed, with costs.*