[No. 29983.  Department Two.  November 29, 1946.]

EGBERT E. EVEREST *et al., Appellants,* v. HARVEY RIECKEN *et al., Respondents.*[1]

[1]Reported in 174 P. (2d) 762.

*John C. Richards* and *James Tynan,* for appellants.

*John D. MacGillivray,* for respondents.

MALLERY, J.—Appellants, Egbert E. Everest and Gladys Everest as a marital community, and Egbert E. Everest as guardian *ad litem* for his minor son, Jack Everest, brought this action to recover for personal injuries sustained by him in a collision between a bicycle ridden by him and an automobile owned by respondents as a family car, and driven by their minor son, James F. Riecken.

The cause was tried to the court sitting with a jury, but was dismissed at the close of respondents' case upon a motion for a directed verdict. Appellants assign as error (1) dismissal of the action upon respondents' motion challenging the sufficiency of the evidence, and (2) overruling of appellants' motion for a new trial.

A motion for a directed verdict admits the truth of the plaintiffs' evidence and all inferences reasonably to be drawn therefrom, and requires that the evidence be interpreted most strongly against the defendant and in the light most favorable to the plaintiff. *Billingsley v. Rovig-Temple Co.,* 16 Wn. (2d) 202, 133 P. (2d) 265.

So interpreted, the evidence established the following facts. The accident here in question occurred at 10:15 p. m. on July 15, 1941, just south of the intersection of Rucker avenue and 15th avenue in a residential district of the city of Everett. Rucker avenue is thirty-six feet wide between vertical curbs, is paved its full width, and extends in a north and south direction. Bisecting Rucker avenue are 14th avenue, 15th avenue, and 16th avenue, running east and west. The 15th avenue intersection is illuminated by a white light suspended over the center thereof by means of a cable attached to poles. The lot on the southwest corner of this intersection is occupied by Van's grocery store, which extends southward along Rucker avenue forty-two and one-half feet from the southerly property line of 15th avenue. The front of this store was described as being "all

glass." At the time of the accident, the aforementioned street lamp was burning, and there were one or two lights burning in Van's store as the proprietor was counting his cash, but the front lights thereof had been extinguished. There is no evidence as to the intensity of any of the lights other than that the street light was "bright." The night was dry, clear, and brightly moonlit. The pavement was dry.

No one witnessed the impact. Jack Everest testified that he remembered nothing concerning the crash nor the events immediately preceding it. On the other hand, neither James Riecken nor his fiancee, who was a passenger in his car, saw the bicycle before he struck it. The principal witness was George Varnell, a fourteen-year-old boy, who, until a moment before the impact, had been riding on the handlebars of Jack Everest's bicycle. At the time of the impact, he was standing on the street, facing west, or away from the scene, with his right hand on the handlebars. He was not injured.

According to young Varnell, he and Jack Everest had been visiting with another boy on the east side of Rucker avenue between 14th and 15th avenues. Shortly before 10:15 p. m., they had set out for Jack Everest's home, which was located on the west side of Rucker avenue between 15th and 16th avenues. At a point in front of their friend's house, they proceeded across Rucker avenue to the west portion of the pavement and there took a straight southerly course, riding seven or eight feet out from, or to the east of, the west curb. When they reached a point sixty to seventy feet north of the 15th avenue intersection, they were passed three or four feet to their left by a car driven by Lester Jones, which was also proceeding south. As they reached the 15th avenue intersection, Varnell observed two things. He saw the Jones car pull over to the right and park at the west curb in front of Van's store. Looking farther to the south, he observed that a bus, northbound on Rucker, had stopped at the southeast corner of the 16th avenue intersection, three hundred feet away, and was being passed by a northbound automobile, which later proved to be that of respondents.

Varnell further testified that the respondents' car was then to its left of the center of the avenue and appeared to be bearing down upon the bicycle at a speed of forty to forty-five miles an hour. According to Varnell, the bicycle continued its southerly course, passing to the left of the Jones car and so close to it that he could have touched it with his foot. As he and appellant came abreast of the Jones car, it appeared to Varnell that a collision with respondents' automobile was imminent. Intending to warn appellant, he shouted "look out" twice in quick succession, and as soon as the front wheel of the bicycle passed the left front fender of the Jones car; he slid off the handlebars to a position of safety. The collision, in which Jack Everest suffered severe injuries, occurred immediately thereafter.

It does not appear where the bicycle ultimately landed. Jack Everest was found lying in the street in a pool of blood two or three feet forward of the left front bumper of the Jones car. Later that evening, police officers ascertained the location of the pool of blood as being seventy-one feet from the south curb line of 15th avenue and twelve feet to the east of the west curb of Rucker avenue. According to Officer Heum, the south property line on 15th avenue is twenty feet south of the curb line. The pool of blood with relation to Van's store was therefore eight and one-half feet south of Van's south wall. There were also several small blood spots a few feet to the south of the large pool. Six or seven feet south of the main blood spot and a small undetermined distance east thereof, the officers found a dust spot—"A hunk of dirt as they tear loose from the fender."

Police examination of respondents' automobile disclosed a dent approximately in the center of the left fender, blood on the left door hinge, and a small amount of flesh, blood, and hair adhering to the left door handle. Jones testified that after the crash he found blood spattered on most of the hood of his car, that the headlight, which was mounted inboard from the left front fender, was dented, that the fender itself was dented, and that the license plate previously mounted on the bumper below the headlight had been

completely torn off. The headlights of the Jones car were not burning at the time of the accident.

James Riecken and his fiancee testified that neither of them saw the bicycle until after he had stopped his car and got out to investigate. His explanation was that when his car had reached a point one half to two thirds of the way from 16th to 15th avenues, he was partially blinded by the headlights of a southbound car which was pulling away from the west curb. The jury was not bound to believe this explanation if they did not choose to do so, but the respondents are bound by the admission that he did not see the bicycle.

It was admitted that the bicycle was not equipped with a headlight, nor was Jack Everest, at the time of the accident, carrying a light of any sort.

■ Taken in the light most favorable to appellants, the direct and circumstantial evidence summarized above establishes James Riecken's primary negligence, in that a proximate cause of the collision was the presence of his automobile on the wrong side of the road, which was not shown to be without fault. See *Coerver v. Haab,* 23 Wn. (2d) 481, 161 P. (2d) 194, 161 A. L. R. 909.

■ The question is whether Jack Everest was guilty of contributory negligence as a matter of law, so that the case should have been taken from the jury. In operating his bicycle at night without a headlight, he failed to comply with the mandate of Rem. Rev. Stat., Vol. 7A, § 6360-20 [P.P.C. § 291-13], and was thus guilty of negligence *per se. Johnson v. Heitman,* 88 Wash. 595, 153 Pac. 331; *Ross v. Johnson,* 22 Wn. (2d) 275, 155 P. (2d) 486; *Portland-Seattle Auto Freight v. Jones,* 15 Wn. (2d) 603, 131 P. (2d) 736; *Geri v. Bender,* 25 Wn. (2d) 50, 168 P. (2d) 144.

■ Contributory negligence as a defense is not made out, however, unless such negligence is shown to be a proximate cause of the injury by contributing thereto so that but for the negligence the injury would not have occurred. *Briggs v. United Fruit & Produce,* 11 Wn. (2d) 466, 119 P. (2d) 687.

■■ Applying the rule to the instant case, if under the circumstances James Riecken kept a proper lookout and

could not see the bicycle because it had no headlight as required by law, then the failure to carry such a light would clearly be a proximate cause of the accident, and the appellants could not recover for the injury. However, the state of the record does not warrant us in saying, as a matter of law, that he looked, and that he could not see the bicycle under the circumstances then obtaining. It is a question of fact for the jury to pass on. The question of proximate cause generally falls within the province of the jury.

"We have decided that usually the question of proximate cause is for the jury, and it is only when the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion that it may be a question of law for the court. *Schofield v. Northern Pac. R. Co.*, 4 Wn. (2d) 512, 104 P. (2d) 324; *Ross v. Johnson, ante* p. 275, 155 P. (2d) 486. . . .

"There are many cases in which we have held, as a matter of law, that the negligence of one violating a statute or ordinance was a proximate cause of an accident, but in those cases the conduct of the party constituting the violation was so clearly a cause thereof that by no process of reasoning could it be said the accident would not have happened if it were not for such conduct. In this case the effect of the statutory negligence of appellant is debatable and open to differences of opinion." *Mathers v. Stephens*, 22 Wn. (2d) 364, 156 P. (2d) 227.

In *Miles v. State*, 174 Md. 292, 198 Atl. 724, upon facts similar to those presented here, the court said:

"No presumption of negligence is raised merely because of an injury to a boy riding a bicycle which was caused by the driver of the automobile coming into collision with the bicyclist. The question of the negligence of the respective parties is generally an issue for the jury. So, if the driver of an automobile leaves his lane of travel and moves across the center line of the highway without any apparent cause, and thus comes into collision with a bicycle which is being ridden in an opposite direction on the rider's right side of the highway, where the bicyclist is properly traveling in the exercise of reasonable care and caution, except that the bicycle is not equipped with any of the lights required by statute, the question of negligence of the respective parties is for the jury, unless the noncompliance by the bicycle rider with the statutory provisions with respect to the carry-

ing of lights on the bicycle appears from the evidence to have contributed proximately to the collision. [Citing cases.]

"Although a fact to be considered in determining whether, at the happening of the accident, the bicyclist acted with reasonable care, the mere concurrence of his violation of the statute, with respect to the carrying of a light on the bicycle, with the accident in point of time does not necessarily render the violation a proximate and contributing cause of the injury. 5 Amer. Juris., Secs. 409, 412, 426. To take the case from the jury on this ground, the direct and proximate causal connection between the accident and the violation of the statutory traffic regulation in respect of the carrying of lights must be a necessary inference from decisive facts and circumstances which do not require their ascertainment by the jury. The relationship between the accident and the breach of the regulation is, however, generally a question of fact for the jury to find from all the pertinent facts and circumstances. In the instant case the question was rightly left for the resolution of the jury under appropriate instructions. The jury found that this connection of cause and effect did not exist. There was sufficient testimony, if believed, to support this determination. The jury could have drawn the rational conclusion from this testimony that the absence of a light on the bicycle was not a proximate contributing cause, but that the accident occurred within the range of the illumination of a street light which rendered the boy and his bicycle visible to the defendant in time to avert the collision if, in the exercise of reasonable prudence and care under the unfavorable weather conditions, the defendant had kept his automobile under reasonably prudent control and looked ahead when he, without any traffic or other cause, left his proper side of the highway and entered the right of way of travelers approaching in the opposite direction and struck the bicycle, while its rider was proceeding carefully about 6 feet from the curb on the north side of the street, and near the pole which carried the device to which the street light was affixed. In short, the jury found, and there was legally sufficient evidence to support their verdict, that the absence of the light on the bicycle did not prevent its being obvious."

The evidence in the *Miles* case, *supra,* was that when struck by the defendant's automobile, the plaintiff was almost directly underneath a 100-candle-power street lamp.

On the other hand, that accident occurred at half past ten on a dark, foggy, and rainy night. In the instant case, while appellant was not directly underneath the street lamp when the accident occurred, it was not shown that he was outside of its orbit of illumination. Moreover, the moonlight, the clear atmosphere, and the possible effect of the light in Van's store, were all factors to be weighed in resolving the question of proximate cause.

Under the circumstances of this case, we think that reasonable minds can differ upon the proposition that, but for the absence of lights on the bicycle, the accident would not have occurred. We must therefore hold that it was error to withdraw the case from the jury.

The judgment is reversed, and the case remanded with directions to grant a new trial.

MILLARD, C. J., STEINERT, and SCHWELLENBACH, JJ., concur.

SIMPSON, J., dissents.