[No. 30465. Department One. August 12, 1948.]

O. S. NEFF, *as Guardian ad Litem of Howard Kenneth Neff, a Minor, et al., Appellants,* v. BRUNO STUDIOS, INC., *et al., Respondents.*[1]

[1]Reported in 196 P. (2d) 845.

310

*Heideman, Johnson, Flanagan & Russell,* for appellants.

*Eggerman, Rosling & Williams,* for respondents.

HILL, J.—A collision between an automobile and a bicycle occurred in the intersection of Fourth avenue (an east-west street) and Puget street (a north-south street) in Olympia on March 11, 1941, at an hour which the respondents concede was not later than 6:44 p. m. Richard S. Hull, while in the course of his employment for the respondents, was driving a Willys automobile east on Fourth avenue and made a left turn to go north on Puget street. Two boys, Howard Neff, then ten and one-half years of age, and Ted Kelly, then eleven and one-half, were riding a bicycle without any lights, traveling west on Fourth avenue close to the northerly curb, with the Kelly boy operating the bicycle and the Neff boy sitting sideways on the bar between the seat and the handle bar, hereinafter referred to as the crossbar. The appellants contend that the collision occurred in the northwest quarter of the intersection and near the westerly curb line of Puget street extended, while the respondents assert that it was in the northeast quarter and near the easterly curb line of Puget street extended.

The boys sustained serious injuries, and this action was commenced by their fathers, as their guardians *ad litem,* in April, 1942, to recover therefor. Trial was delayed for four years by reason of the absence of one of the respondents in the armed forces of the United States. A jury brought in a verdict for Ted Kelly in the sum of $2,839 and

for Howard Neff in the sum of $3,279.50. The trial court granted a motion for judgment notwithstanding the verdict and entered an order dismissing the action with prejudice. From the judgment of dismissal, this appeal was taken.

We agree with the respondents that the only question presented for our determination is whether or not the boys on the bicycle were guilty of contributory negligence as a matter of law.

We will assume that the boys were guilty of negligence *per se* in two particulars: (1) They were riding with no headlight on the bicycle more than thirty minutes after sunset (this was a violation of an Olympia ordinance and a state statute, Rem. Rev. Stat., Vol. 7A, § 6360-20 [P.P.C. § 291-13]); and (2) one of the boys was occupying a position in front of the operator of the bicycle (this was a violation of an Olympia ordinance). We say "assume" because, while the respondents suggested, they did not prove, that the time of sunset on March 11, 1941, was 6:08 p. m., and because the collision may have occurred prior to 6:38 p. m.

The collision occurred not later than 6:44 p. m., on a clear March day, and a jury could have found that visibility was good and lights on automobiles and bicycles not necessary. The jury could also have found, from the Kelly boy's testimony, that the presence of the Neff boy on the crossbar of the bicycle did not impair young Kelly's vision or view of the highway in the direction from which the car driven by the respondents' agent came.

The case of *Everest v. Riecken,* 26 Wn. (2d) 542, 174 P. (2d) 762, is of considerable interest here. It involved a head-on collision between an automobile and two boys riding a bicycle which had no lights. The boys were older; the hour was later; the boy other than the operator was riding the handle bar rather than the crossbar. The only question of contributory negligence referred to in the opinion was the violation of the statute requiring a headlight on the bicycle. We there held that the trial court had erred in granting a directed verdict and in dismissing the action, because:

"Under the circumstances of this case, we think that reasonable minds can differ upon the proposition that, but for the absence of lights on the bicycle, the accident would not have occurred. We must therefore hold that it was error to withdraw the case from the jury."

See, also, *Miles v. State,* 174 Md. 292, 198 Atl. 724, from which we quoted extensively in the *Everest* case.

■ We are convinced that, not only as to the absence of lights but also as to the presence of the Neff boy on the bicycle, there was evidence from which the jury could have found that neither act of negligence was a proximate cause of the collision.

It is conceded that the boys did not see the automobile until the very moment of the impact, and that a very slight deviation from their course would have enabled them to avoid the collision. Respondents argue that this was conclusive evidence of their failure to keep any lookout ahead and of their failure to exercise the slightest amount of care. We could agree with the respondents if the jury had to accept their theory of the actions of their agent, *i.e.,* that he stopped at the intersection, made a proper turn to the left, and the collision occurred in the northeast quarter of the intersection when his car was headed north and was almost out of the intersection. Under such circumstances, failure by the boys to see the automobile would have been contributory negligence. But it must also be considered that the jury might have believed that the respondents' agent, while traveling thirty to thirty-five miles an hour, suddenly whipped across Fourth avenue well south of the intersection, at a speed and at a place that the boys would not have anticipated. The boys, having satisfied themselves that there was no car turning from Fourth avenue onto Puget street at a place where such a turn could lawfully be made, might well have been more concerned with the car which witnesses agree was coming south on Puget street and was about to enter Fourth avenue, and their attention would naturally have been directed momentarily to the north. That it was, is a reasonable inference from the evidence.

■ It is conceded that a judgment notwithstanding the verdict will not be granted unless the court can say, as a matter of law, that there is neither evidence nor reasonable inference from the evidence to justify the verdict.

■■ The trial court properly instructed the jury that boys ten and eleven years old are required to use only that degree of care which ordinarily prudent boys of their age, education, and experience would usually exercise under the same or similar circumstances to avoid injury. We cannot say, if the car driven by respondents' agent suddenly cut across the street at a place where it had no right to be, that, because they did not see it, the boys were guilty of contributory negligence as a matter of law.

Respondents cite many cases to establish that children ten and eleven years of age may be guilty of contributory negligence, and with that proposition we have no quarrel. We have, in fact, indicated that, if it had been incontrovertibly established that the car of respondents' agent had turned where the respondents said it turned and had been where they said it was at the time of the collision, we would agree that the boys were guilty of contributory negligence barring their recovery.

Respondents place great reliance on the case of *Masterson v. McGoldrick Lbr. Co.*, 128 Wash. 1, 221 Pac. 990, and they emphasize and twice quote the following language therefrom:

"Anyone at all attentive to his own approach to the intersection must have seen it, had he been exercising the slightest degree of care. . . . He evidently was not attentive to the conditions, for he did nothing to slacken his speed, nor did he swerve at all from his direct course, and ran his bicycle straight into the truck. The only conclusion must be that he was entirely neglectful of his own safety."

That language, while apropos in that case, is not applicable to the conduct of the boys involved in the present case, although they never slackened speed or swerved, and ran straight into the Willys sedan. There are sufficient points of similarity in the *Masterson* case to make it seem, at first glance, a decisive authority, but a closer analysis discloses

many distinguishing features. In that case, which came up from Spokane, the boy was riding his bicycle south on Hamilton street, and a lumber truck was proceeding north on that street at a speed of from thirteen to eighteen miles an hour. The truck made a left turn to go west on Mission avenue and cut the corner. Mission avenue is exceptionally wide, being one hundred feet across with a parking area twenty feet in width in its center. The bicycle came into collision with the truck near its rear end, and the point of collision was fixed as being a little to the north or a little to the south of the center of Mission avenue and close to the center of the west side of Hamilton street. In that case, the boy on the bicycle was held to be guilty of contributory negligence as a matter of law.

Features which distinguish that case from the one now before the court are:  (1) the size of the truck:  the court there said that it " .  .  .  was of such size and so conspicuous that anyone at all attentive to his own approach to the intersection must have seen it  .  .  . "; the car involved here was a Willys sedan, and certainly not conspicuous for its size; (2) the truck was moving at a speed of from thirteen to eighteen miles an hour; the jury could have found the speed of the Willys to be thirty to thirty-five miles an hour; (3) Mission avenue is one hundred feet in width, whereas Puget street is but twenty-three feet from curb to curb; (4) although the truck cut the corner, it was near the center of the intersection; the jury could have found that the Willys began to cut the corner a considerable distance west of the intersection, that the actual point of collision was almost on a line with the west curb of Puget street extended, and that the bicycle had traversed practically the entire width of Puget street between its curb lines extended, which would place the Willys entirely on the wrong side of both Fourth avenue and Puget street; (5) the court there said, "There is no testimony that there was anything else upon the street which could, or did, distract the appellant's attention  .  .  . "; the jury could have found that a car was coming south on Puget street which could have, and naturally would have, distracted the attention of the boys.

None of the other cases relied upon by the respondents are as close to the present situation as the *Masterson* case, and, as we have demonstrated, that case and the present have numerous distinguishing features.

To summarize, we believe that there was a question for the jury as to whether either of the two acts of negligence *per se* by the boys was a proximate cause of the collision, and that whether or not they kept a proper lookout under all the circumstances was likewise a jury question.

The jury determined all of those questions adversely to the respondents, and we see no reason to justify its verdict being set aside. The judgment of dismissal is reversed and the cause remanded, with instructions to the trial court to enter a judgment on the verdict.

MALLERY, C. J., MILLARD, SIMPSON, and SCHWELLENBACH, JJ., concur.

