## STEELE v. COMMERCIAL MILLING CO.

### No. 5674.

Circuit Court of Appeals, Sixth Circuit.
June 11, 1931.

⬅35.

H. C. Milligan, of Detroit, Mich., for appellant.

James Turner, of Detroit, Mich. (Angell, Turner, Dyer & Meek, of Detroit, Mich., on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge.

Suit for damages for personal injuries. Gratiot street in Detroit at the point where appellant was injured runs east and west. Two street car tracks are located on it. The street is of concrete surfaced with asphalt except that the paving between the car tracks is of granite blocks. On each side of the street and between the curb and the sidewalk is a grass plat. Appellant lived in Cincinnati but operated trucks between Cincinnati and Detroit. At the time he was injured he was standing on the grass plat on the south side of the street engaged in conversation with one Perry. His business there was to buy tires for a truck. Appellee's truck with a five-ton trailer attached and driven by one Morkowitz was traveling eastwardly upon the street at the rate of 10 to 15 miles per hour. A Chevrolet coupé and other cars were parked along the curb on the south side so that, in order to pass, Morkowitz was driving with the inside wheels of his truck upon the asphalt and the outside ones upon the granite block pavement of the car line. Both truck and trailer were loaded but the trailer was not loaded quite to capacity. The trailer was coupled to the truck by a steel drawbar fitted into drawheads and held by coupling pins. The drawheads were located at the centers of the rear end of the truck and the front end of the trailer respectively. The trailer had two safety chains attached to its front end, one on each side of the coupling and near the outside of the trailer. These chains were connected to the trailer by eyebolts driven through the frame of the trailer and riveted. The chains extended crosswise from the front of the trailer to the rear of the truck and were there attached by hooks operating in eyebolts. At the point of the accident the trailer became detached, made a sudden left turn, then a right turn, crashed into the coupé, and shoved it about 25 feet along the street and over the curb. The trailer crossed the curb and struck and injured appellant.

As designed the pull of the trailer is upon the drawbar only. It was not intended that the chains should ordinarily draw the trailer. They are safety factors only. After the accident it was discovered that the drawbar had become detached from both the truck and trailer and was found in the street. The coupling pin attaching it to the truck was broken in two places and the drawbar's connection with the trailer was also broken. It is obvious that when these breaks occurred the stress of the trailer fell upon the chains. Upon inspection an eyebolt attaching one of the chains to the trailer was found pulled entirely through the frame of the trailer and a portion of the frame itself had been pulled out. The eyebolt upon the opposite side of the trailer had been pulled into the frame and the connecting hook had been pulled straight. It is clear that the accident happened because the chains and connections had failed to hold. If, after the drawbar had broken, the chains had pulled the load no accident would have happened.

The declaration alleges various acts of negligence. Appellant, however, upon the trial abandoned all of them except the matter of the chains. Counsel said: "I might say, Your Honor (to interrupt), that I waive all grounds of negligence except the failure to have chains on,—I rely entirely on that point." Counsel thereupon introduced Act No. 8 of the Statutes of Michigan, Public

Acts, 1919, Extra Session. This act had then been repealed by Act 321, Public Acts of 1923, but its substance had been re-enacted with additional provisions and is found at section 4763 of the Compiled Laws of Michigan for 1929. This section is set out in the margin.[1]

The declaration alleges a failure of the defendant (appellee) "to comply with all the laws of the State of Michigan respecting the operation of motor vehicles upon the highways of the State." This allegation is too general in its nature to constitute good pleading, but it was not challenged nor was any bill of particulars or more specific statement requested. There was the plea of the general issue only.

The court sua sponte instructed the jury to return a verdict for appellee. We think that in this there was error. Although penal in character (see section 4767, Compiled Laws of Michigan, 1929), we think the statute (of which the court might have taken judicial notice, Lamar v. Micou, 114 U. S. 218, 5 S. Ct. 857, 29 L. Ed. 94, Baltimore & O. R. R. Co. v. Reed, 223 F. 689, 697 [C. C. A. 6]) was intended for the protection of travellers upon the highway. The provision requiring (1) a six-inch minimum deflection of the trailer wheels from the tracks of the truck; (2) suitable safety chains or devices and that they and their connections shall be of sufficient strength to haul the trailer when loaded; and (3) red and green lights reflect this purpose. See Wilkowski v. Grant Iron & Metal Co., 219 Mich. 535, 538, 189 N. W. 10. We think appellant was within the class the statute was designed

to protect. We regard the grass plat as within the protected limits. The immediate purpose of the act was to prevent the trailer from becoming detached and running wild.

The issue, none too clearly but we think sufficiently presented, was whether the statute was violated,—i. e., whether the chains were "of sufficient strength to haul the trailer when loaded." Although this statute was penal in form, its breach would constitute adequate basis for civil liability for all damage directly and proximately caused thereby. Cf. Davis v. Wolfe, 263 U. S. 239, 243, 44 S. Ct. 64, 68 L. Ed. 284; Minneapolis, etc., Ry. v. Goneau, 269 U. S. 406, 410, 46 S. Ct. 129, 70 L. Ed. 335; Sherry v. B. & O. R. Co., 30 F.(2d) 487, 488 (C. C. A. 6); Zajkowski v. Am. Steel & Wire Co., 258 F. 9, 13, 6 A. L. R. 348 (C. C. A. 6). In terms it imposes an absolute obligation, and the conceded facts—that the trailer broke loose from the truck and ran wild—demonstrate that the safety chains (or their connections) were not of sufficient strength to haul the trailer when loaded, that is, to prevent the very mischief which was in contemplation and which here occurred.

The defendant introduced testimony with intent to show that the truck and trailer did not separate because the chains and connections were of insufficient strength, but because of some sudden shock from the impact of the trailer upon cobblestones or against holes or rough places in the pavement. The street was not an unusual one, nor did it appear that the impacts received were not such as should reasonably have been anticipated in ordinary urban operation. The insufficiency of the chains to prevent a parting of truck and trailer, when the drawbar failed upon the journey, was due solely to their construction or deterioration, to the nature of the other appliances (including the drawbar and its connections), or to the known and quite customary condition of the street over which the truck was voluntarily operated. All of these matters are to be considered as contemplated and attending conditions of, and included within, the statutory definition of the prescribed strength of the chains. Under such circumstances manifest error was committed in directing a verdict for defendant.

The judgment is therefore reversed, and the cause remanded for a new trial.

[1] "4763. Trailers; equipment. Sec. 6. All trailers or semi-trailers hauled by any motor propelled vehicle must be so attached to such vehicle and to each other, if more than one (1) trailer is hauled, with such forms of coupling devices as will prevent such trailer or trailers or semi-trailers from being deflected more than six (6) inches from the path of the towing vehicle's wheels. Trailers must also be connected to the towing vehicle or to each other by suitable safety chains or devices, one (1) on each side of the coupling and at the extreme outer edge of the vehicles and each such chain or device and connection so used shall be of sufficient strength to haul the trailer when loaded. On all trailers and semi-trailers so hauled on the public highways between the hours of one (1) hour after sunset and one (1) hour before sunrise shall be carried a green light on the left side of each trailer or semi-trailer, which light shall be so fixed as to be plainly visible to the drivers of other vehicles or to persons using such highways. A red light shall be properly fixed to the rear of the last trailer so hauled between the hours above stated."