659

**SEARS et al. v. BEVERLEY.**

No. 5791.

United States Court of Appeals
Fourth Circuit.

Dec. 17, 1948.

Robert H. Engle, of Baltimore, Md.
(Clark, Thomsen & Smith, of Baltimore,
Md., on the brief), for appellants.

David R. Owen, of Baltimore, Md.
(Semmes, Bowen & Semmes, of Baltimore,
Md., on the brief), for appellee.

Before PARKER, Chief Judge, and
SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This case arose out of a motor vehicle
accident in which two trucks (one towing
the other)—both owned by the appellant
Sears—collided with the appellee's tractor-
trailer unit. The appellee filed suit in the
District Court against Sears as owner of
the trucks, and Plowden and Berry, drivers
of the trucks, and against one Richard
Walthen. The suit was non-prossed as to
Walthen. As part of his answer, the ap-
pellant Sears filed a counterclaim for the
damages to his trucks. After trial before

the District Judge, sitting without a jury, a judgment was entered in favor of the plaintiff-appellee against the defendants-appellants Sears, Plowden and Berry. From that judgment this appeal to us has been taken.

The issues in this case are peculiarly factual, so it will be necessary to consider in some detail the circumstances surrounding the accident.

On November 12, 1947, Sears, owner of a farm in St. Mary's County, Maryland, sent his two trucks to Baltimore to pick up loads of fertilizer. When the drivers of the trucks were ready to return home, Berry's truck, a 1935 Ford, would not start and Plowden, driving a 1940 Ford, agreed to tow it. The trucks were then secured by means of a twenty-foot log chain attached to the chassis of the lead truck and to the front spring handle of the other. Joined in this manner, the trucks were proceeding south on Route 301, about fifty miles from Baltimore, when the collision occurred.

Although each of the trucks exceeded eighty inches in width and thus required clearance lights under the Maryland law, Md.Code, 1947 Supp., Art. 66½, § 216(b), neither truck, at the time of the accident, was burning clearance lights nor even had them properly installed.

The vehicle owned by the appellee was a tractor of the ordinary type, hauling a semi-trailer loaded with lumber. The trailer was approximately seven feet wide, twenty-six feet long and was of the flat body type. There is no question that this vehicle carried all necessary and proper lights including headlights, cab lights and clearance lights.

The scene of the collision was a small bridge, sixty-nine feet long, over Mattawoman Swamp. The highway, approaching the bridge from the north (direction of appellants' trucks), proceeds down a hill, around a curve to the right and onto the bridge. From the south, the road again is downhill, around a curve to the left and onto the bridge. In other words, although the bridge itself is straight, it is in the middle of an otherwise continuous curve and lies in the valley between two hills.

The highway is of concrete and asphalt construction, twenty feet wide, each traffic lane being about nine and one-half feet in width. There is a shoulder two and one-half feet wide between the pavement edges and the bridge railings so that the total distance between the bridge railings is approximately twenty-five feet. This was ample space for the vehicles to pass safely if each had been proceeding in its assigned traffic lane.

The accident occurred at 8:20 P.M. on November 12, 1947. The night was dark and the road dry. Appellants' trucks, travelling at a speed of from thirty to thirty-five miles per hour, had descended the hill, turned to their right onto the bridge and traversed the bridge when, at the south end of the bridge, the lead truck collided with the left rear wheel of appellee's tractor. The tractor-trailer unit was travelling in the opposite direction (north), also at a speed of between thirty and thirty-five miles per hour, had turned to its left and was just entering the south end of the bridge when it was struck.

The impact of this first collision tore the front wheels from under the lead truck which overturned and lay on its side across the highway. The towed truck then side-swiped the left front fender of appellee's tractor and proceeded forward into the overturned lead truck. The first collision also broke loose the air brake hose of the tractor-trailer which travelled, out of control, across the bridge and into a field at the north end.

As is not surprising in accidents of this type, the testimony is in hopeless conflict as to exactly what happened. The principal conflict is presented by the claim that each driver was on his own side of the road and that the other driver was encroaching thereon. In this situation, resort must be had to the physical facts to determine, as can best be done, the relative positions of the two vehicular units.

Apart from the location of the vehicles upon the highway, however, we have no difficulty in finding, as did the District Judge, that the appellants were negligent. Plowden and Berry were attempting, after dark, to tow a disabled

truck heavily loaded and swaying back and forth at the end of a twenty foot chain, half-way across the State of Maryland. It is undisputed that neither truck had the required clearance lights; and, although there is dispute here, the testimony strongly suggests that the towed truck did not have headlights burning, in which event it could not have been seen from ahead at all.

■ Clearly, here was a dangerous situation and it is small wonder that an accident resulted. Moreover, the appellants were violating a Maryland statute which prohibits such a towing operation as this. Maryland Code, 1947 Supp., Art. 66½, § 212(a), provides:

"(Moving Unsafe Vehicles.) (a) It is a misdemeanor for any person to drive or move or for the owner to cause or knowingly permit to be driven or moved on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person, or which does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this Article, or for any person to do any act forbidden or fail to perform any act required under this Article."

Although this statute is penal in form, it establishes a standard of care the breach of which constitutes adequate basis for civil liability for all damage directly and proximately caused thereby. Cf. Steele v. Commercial Milling Co., 6 Cir., 50 F. 2d 1037, 84 A.L.R. 278.

■ Also, the District Judge found—and we agree—that the speed of the two-truck unit was excessive under the circumstances: "This unit was not under such control as to warrant its going at the speed it was moving, from 30 to 35 miles an hour, and certainly not without the requisite lights."

Although no citation of authority is needed to support the conclusion that appellants were negligent in several respects, there are several Maryland cases involving towing operations where conduct similar to appellants' was held sufficient to constitute primary negligence. General Refining Co. v. International Harvester Co., 173 Md. 404, 196 A. 131; Porter v. Greenbrier Quarry Co., 161 Md. 34, 155 A. 428; Steer v. Huber, 130 Md. 698, 102 A. 1052.

There remains the question of the causal relation between appellants' negligence and the occurrence of the collision. In considering the appellants' failure to show the requisite lights, we are confronted with the problem of relating causally a non-feasance to the happening of an accident. What one party would have done had the other taken proper precautions to warn him of impending danger must always be difficult to determine.

That Lee, driver of appellee's tractor-trailer, was in no way warned of the dangerous vehicle he was about to pass is clearly evidenced by his testimony:

"Q. When you approached that bridge, how many vehicles did you see? A. When I approached the bridge?

"Q. Yes. A. I saw the lights from a vehicle.

"Q. From a vehicle? A. Yes.

"Q. Did you see the second vehicle at that time? A. I didn't see no second vehicle at all."

Lee was even more specific when he testified:

"Q. Could you make out what type of vehicle it was, at that moment? A. I couldn't tell whether it was a car, truck, or what it was.

"Q. Could you make out how many vehicles were coming toward you? A. No, I could not.

"Q. When did you first know what type and number of vehicles were coming toward you? A. Just the second before they hit.

"Q. What did you see at that time, the second before the vehicle hit you? A. When the first truck got up almost to the side of me, I saw something move out, like a house. That was the second truck."

■ Had Lee been properly warned, he might have stopped short of the bridge at a point where he could have driven

well off the pavement, or slowed down to a speed at which he could have stayed virtually against the bridge railings and given the better part of the roadway to this dangerous unit. Appellants' failure to have the proper lights, however, misled Lee and encouraged him to proceed to a place of danger. This failure, plus appellants' driving at an excessive speed, were at least contributing causes of the accident. See Gittings v. Schenuit, 122 Md. 282, 286, 90 A. 51, 52; Broussard v. Teche Transfer Co., 15 La.App. 439, 441, 132 So. 136, 137.

 We do not agree with the District Judge, however, that the appellee's conduct was free from fault. One of appellants' witnesses, who had been riding in the cab of the lead truck, testified positively that appellee's vehicle "was riding over the line." It is well known that, in making a turn, the rear wheels of a tractor-trailer such as appellee's will describe a shorter arc than will the front wheels. The truck unit safely cleared the forward part of the tractor-trailer and first struck the left rear wheel of the tractor which strongly suggests that the tractor-trailer was at an angle across the roadway. Appellee's vehicle, too, had just come down a hill, was making a turn to its left at an admitted speed of thirty-five miles per hour and was entering at night upon a bridge in the face of an approaching vehicle. In the light of these facts, we must conclude that the driver of the tractor-trailer was "cutting the curve" as he entered the bridge. See Oberfeld v. Eilers, 171 Md. 332, 189 A. 203. The District Judge, in his opinion, made no specific finding as to the precise position of these vehicles, with reference to the center of the road, at the time of the collision.

Our conclusion that the appellee's unit was at least partially on the wrong side of the road is strengthened by the testimony of Lee, appellee's own driver and witness. Lee testified that, as the trucks approached the bridge, the left front wheel of the lead truck was riding, but was not over, the center line, and that so far as he knew, the trucks continued on straight across the bridge. At no time did Lee state positively that the lead truck was across the cen-

ter line and onto his (Lee's) side of the highway. This testimony of appellee's own witness militates strongly against him, for, assuming that the truck was in fact in this position, such a direct and forceful blow could not have occurred unless appellee's tractor was itself across the center line.

Since we conclude that both the parties here were at fault and that the negligence of both contributed to the collision, we must hold that neither party may recover damages of the other and that each must suffer his own damages.

The decision of the District Court awarding damages to the plaintiff-appellee is reversed and the case is remanded to the District Court with instructions to enter judgment in accordance with this opinion.

Reversed.