**UNITED STATES v. ANTONIO CORRAO CORP. et al.**

No. 37, Docket 21697.

United States Court of Appeals Second Circuit.

Argued Oct. 11, 1950.

Decided Nov. 16, 1950.

James M. McInerney, Washington, D. C., Frank J. Parker, Brooklyn, N. Y., and George W. Percy, Jr., Southampton, N. Y. (Vincent A. Kleinfeld, Washington, D. C., Edward K. Adelsheim, Chevy Chase, Md., and Bernård D. Levinson, Washington, D. C., of counsel), for appellee.

Avrutis & Zizmor, New York City, and Julius Zizmor, New York City, for appellants.

Before AUGUSTUS N. HAND, CHASE and FRANK, Circuit Judges.

FRANK, Circuit Judge.

To the facts stated in the trial judge's opinion, the following should be added: Olive oil is more expensive, and is regarded by consumers as more desirable, than vegetable oils. To cheat consumers, some blenders sold blends of olive and peanut oil (or of other vegetable oils) containing a smaller percentage of olive oil than that stated on the labels. Until 1943, the enforcing officials had been unable to detect the amount of olive oil in such a blend. In 1943, there developed the squalene test designed to enable the officials to do so; this test depends upon the fact that olive oil has a relatively large quantity of natural squalene. However, if a blender adds a sufficient amount of squalene obtained from shark-liver oil, the officials using the squalene test will be deceived as to the percentage of olive oil in the blend, unless they discover the fact of the addition of such an amount of shark-liver squalene.

1. The judge acquitted defendants of the misbranding charges, including a charge that the label was false and misleading in representing that the blend contained 20% of olive oil. The defendants were also charged with adulteration (a) under 21 U.S.C.A. § 342(b) (1), in that olive oil had been in whole or part omitted, and (b) under 21 U.S.C.A. § 342(b) (4) in that they added squalene "so as to * * * make said food appear to be better or of greater value than it is, viz. an article containing more olive oil than present in said food." The judge acquitted them of the charge under § 342(b) (1). He held them guilty of the charge under § 342(b) (4). He found that they had added some squalene, and we shall assume that this finding was correct.

2. The form of adulteration prohibited by § 342(b) (4) is so-called "economic adulteration," i.e., that which adversely affects the consumer's pocketbook through the creation of a false appearance, enabling the seller to palm off on the consumer an inferior product as one of superior quality.[1] The addition of shark liver squalene cannot create such a false appearance to the consumer, since the squalene cannot be seen, tasted or smelt by the consumer, and so cannot cause the blend to appear to the consumer to be "better or of greater value than it is." There was, therefore, no direct deception of the consumer.

3. However, we shall assume, *arguendo,* that § 342(b) (4) covers indirect deception, i.e., the addition of an ingredient which creates a false appearance to the enforcing officers, leading them to believe that the product is "better or of greater value than it is", in such a manner that the consumer, by losing the protective services of the officials, suffers an economic disadvantage.

On that assumption, there would have been a violation here, if the squalene added by defendants made the blend seem to the officers, when they used the ordinary squalene test, to contain 20% of olive oil, although actually it contained less; for then, by the defendants' act, the consumer, to his economic harm, would have lost the officers' protective services. But here no violation of that kind was proved, for the judge found that the government failed to prove that the olive oil content was less than 20%.

It is suggested, however, that indirect deception, in violation of the statute, occurred if the added squalene, on an ordinary squalene test, led the officers to believe that the blend contained a larger percentage of olive oil than it did contain, even if the actual percentage was 20%, i.e., the percentage represented to the consumer. It may be urged that such a construction of the statute is untenable because, unless there is less olive oil than that stated on the label, the consumer, who knows nothing of the squalene content, cannot be disadvantaged economically since he receives what he thinks he is buying. But we need not decide whether the suggested construction of the statute is correct, because, even if it is, no statutory violation was proved. For the judge expressly found: "The natural squalene content of olive oil varies with the

---

1. See Federal Security Administrator v. Quaker Oats Co., 318 U.S. 218, 230, 63 S.Ct. 589, 87 L.Ed. 724; United States v. Two Bags, etc., 6 Cir., 147 F.2d 123.

geographical source of the oil and the climatic and other conditions under which it is produced. There was no evidence to indicate the squalene content of the said blended oil prior to the alleged adulteration." As there was no evidence of the squalene content of the blend before the shark-liver squalene was added, there was no evidence of the amount that defendants added, and therefore no evidence that the added amount was sufficient to create an appearance which would deceive the officials. For, according to the judge's finding, the correlation between (a) the quantity of natural squalene and (b) the quantity of olive oil is not so exact that the addition of any amount, however small, of shark-liver squalene will necessarily make it appear, on a squalene test, that the percentage of olive oil in a blend is greater than it actually is.

4. True, the judge found that defendants had added squalene "in order to make [the product] appear to be of better and greater value." This means that they acted with the purpose or intention of doing that which the statute forbids.[2] But, for the reasons stated above, there was no proof that defendants had done any act violating the statute. Under § 333(a), the forbidden act is a misdemeanor, even in the absence of any improper intent.[3] Under § 333(b), the forbidden act, plus an "intent to defraud or mislead," is a felony. Under neither of those sub-sections is there a crime if the defendant does not do the forbidden act, although he has an intent to violate. To illustrate: It has been held to be a violation of the statute for a seller of white poppy seeds to add coloring-matter that makes them blue, when naturally blue seeds fetch a higher price from consumers.[4] It could not be a violation if a seller, fully intending to render white seeds blue, added matter which actually left the appearance of the seeds wholly white.[5]

5. It may be true that, since the defendants, by adding some squalene, prevented the officials from learning what the original squalene content had been, they thereby frustrated the officials' efforts to find out whether or not the added squalene made the blend appear "better or of greater value than it is." Perhaps such conduct should be punishable. But we think the statute, as it now reads, does not prohibit it.

Reversed.

CHASE, Circuit Judge (Dissenting):

The appellants were charged in count one with adulterating the blended oil (1) by omitting olive oil, which was a valuable constituent, in whole or in part; and (2) by adding squalene "so as to make said food appear to be better and of greater value, viz., an article containing more olive oil than present in said food."

They were charged in count two with misbranding for the same reasons, i.e., (1) omitting olive oil and (2) adding squalene.

The blend was branded as one containing 80% peanut oil and 20% olive oil. The only reliable proof of the percentage of olive oil in it was the proof of the amount of squalene. Squalene is found in olive oil in varying percentages depending upon the conditions under which the olives from which it is made are grown. So if a

---

2. In the colloquy in connection with the motion to set aside the verdict, the judge said: "I decided, however, that squalene was added. * * * Adding a foreign substance, such as squalene, for the purpose of making it appear to be a better product and of greater value I found them guilty on * * * Sometimes circumstances, inferences, spell out intent, and I could not understand how anybody could add squalene unless I believed that they did it intentionally to make the product look better and defraud the consuming public."

3. U. S. v. Dotterweich, 320 U.S. 277, 280,

64 S.Ct. 134, 88 L.Ed. 48; U. S. v. Kaadt, 7 Cir., 171 F.2d 600; Triangle Candy Co. v. U. S., 9 Cir., 144 F.2d 195.

4. U. S. v. Two Bags, etc., 6 Cir., 147 F. 2d 123.

5. This statute does not make an attempt a crime. Therefore, we need not here consider whether defendant's conduct would have constituted an attempt. Cf. Holmes, J., dissenting in Continental Wall Paper Co. v. Louis Voight & Sons Co., 212 U.S. 227, 267, 271, 29 S.Ct. 280, 296, 53 L.Ed. 486: "A man does not make conduct otherwise lawful unlawful simply by yearning that it should be so."

blended oil, when tested, is found to have at least as much squalene as any olive oil content of 20% would give it, there may be at least 20% of olive oil in it. But the greater the percentage of squalene the greater the percentage of olive oil apparently, and so the better the blend appears to be for, absent adulteration, the percentage of squalene varies directly with the olive oil content.

This blend when tested did show that much squalene and so the trial judge did not find any misbranding. We cannot, of course, disturb that finding. But it was made in the face of the fact that the same judge also found on adequate evidence that shark liver squalene had been added to the blend. This addition of squalene certainly required extra effort to say nothing of extra expense in making up the blend and that the addition was made to cover up an actual deficiency in olive oil, the more costly ingredient in the blend, was an inference plainly to be drawn from the known facts. Had the blend contained 20% of olive oil there would have been no advantage to be gained by adding squalene for there was no reason to spend money, time and effort to make it appear to be better than it was labeled. And when it was proved and found that shark liver squalene was put into the olive and peanut oil blend it was also proved, and it should have been found, that there was less olive oil in the blend than 20%.

However, my present concern is not primarily with an error which we cannot reach on appeal but with trying to prevent that error from being more far reaching than it should be. As to the charge of misbranding the acquittal must stand. But this failure to draw the proper inference of fact as to a deficiency in olive oil affected the first count charging adulteration only in part in that adulteration by the omission of olive oil was not found. Just as in respect to the misbranding charged in the second count what seems to have been the only fair inference was not drawn to establish adulteration by the omission of olive oil.

Nevertheless, when the judge came to deal with adulteration by the addition of shark liver squalene he did find that it was added to the blend "in order to make the same appear to be better and of greater value." He was not so handicapped as he had been before as to drawing permissible inferences from proved facts and in this respect gave effect to the inference that the shark liver squalene was added to make the blend appear to contain more olive oil than it actually did contain. The added squalene deceived the enforcement officials as to the actual olive oil content and brought such adulteration squarely within the scope of the statute.

I would affirm the judgment.