185 F.2d 372
 UNITED STATES
v.
ANTONIO CORRAO CORP. et al.
 No. 37.
 Docket 21697.
 United States Court of Appeals Second Circuit.
 Argued October 11, 1950.
 Decided November 16, 1950.
 
 1
 The defendants went to trial before the district judge without a jury, pursuant to an indictment, the first two counts of which read as follows:
 
 
 2
 "Count One: That the Antonio Corrao Corporation, a corporation, organized and existing under the laws of the State of New York, and trading and doing business in the Borough of Brooklyn, City and State of New York, and Antonio Corrao, an individual, and Paul Corrao, an individual, and Loumen Drug Co., a corporation, organized and existing under the laws of the State of New York and having its place of business in the Borough of Brooklyn, City and State of New York, and Louis Memmoli, an individual, did, within the Eastern Judicial District of New York, on or about June 9, 1949, in violation of the Federal Food, Drug and Cosmetic Act, 21 U.S.C.A. § 301 et seq. unlawfully introduce and deliver for introduction into interstate commerce and cause to be introduced and delivered for introduction into interstate commerce, at the Borough of Brooklyn, City and State of New York, for delivery to New Haven, State of Connecticut, consigned to Market Wholesale Grocers, Inc., a number of metal cans containing a food;
 
 
 3
 "That displayed upon the metal cans in which said food was packed, when introduced and delivered and caused to be introduced and delivered for introduction into interstate commerce, as aforesaid, was among other things, the following printed and graphic matter:
 
 
 4
 "`One Gallon Net Pace
 
 O Mio Dio Brand
 
 5
 Societa Italiana Commerciale Brooklyn, N. Y.
 
 
 6
 80% Choice Peanut Oil and 20% Pure Olive Oil'
 
 
 7
 "That said food, when introduced and delivered and caused to be introduced and delivered for introduction into interstate commerce, as aforesaid, was then and there adulterated within the meaning of 21 U.S.C.A. § 342(b) (1), in that olive oil, a valuable constituent, had been in whole or in part omitted therefrom;
 
 
 8
 "That said food, when introduced and delivered and caused to be introduced and delivered for introduction into interstate commerce, as aforesaid, was further adulterated within the meaning of 21 U.S. C.A. § 342 (b) (4), in that artificial flavor and squalene had been added thereto and mixed and packed therewith so as to make said food appear to be better and of greater value, viz., an article containing more olive oil than present in said food;
 
 
 9
 "That the said Loumen Drug Co. and Louis Memmoli, defendants herein, did, on or about and between July 1947 and June 9, 1948, deliver to the Antonio Corrao Corporation, aforesaid, a substance known as squalene for the purpose of aiding, abetting, counseling, inducing and procuring the introduction and delivery for introduction into interstate commerce of the food adulterated as aforesaid.
 
 
 10
 "Count Two: That the Antonio Corrao Corporation, a corporation, organized and existing under the laws of the State of New York, and trading and doing business in the Borough of Brooklyn, City and State of New York, and Antonio Corrao, an individual, and Paul Corrao, an individual, and Loumen Drug Co., a corporation, organized and existing under the laws of the State of New York and having its place of business in the Borough of Brooklyn, City and State of New York, and Louis Memmoli, an individual, did, within the Eastern Judicial District of New York, on or about June 9, 1948, in violation of the Federal Food, Drug and Cosmetic Act, unlawfully introduce and deliver for introduction into interstate commerce and cause to be introduced and delivered for introduction into interstate commerce, at the Borough of Brooklyn, City and State of New York, for delivery to New Haven, State of Connecticut, consigned to Market Wholesale Grocers, Inc., a number of metal cans containing a food;
 
 
 11
 "That displayed upon the metal cans in which said food was packed, when introduced and delivered and caused to be introduced and delivered for introduction into interstate commerce, as aforesaid, was, among other things, the following printed and graphic matter:
 
 
 12
 "`One Gallon Net Pace
 
 O Mio Dio Brand
 
 13
 Societa Italiana Commerciale Brooklyn, N. Y.
 
 
 14
 80% Choice Peanut Oil and 20% Pure Olive Oil'
 
 
 15
 "That said food, when introduced and delivered and caused to be introduced and delivered, for introduction into interstate commerce, as aforesaid, was then and there misbranded within the meaning of 21 U.S.C.A. § 343(a) in that the statement `80% Choice Peanut Oil and 20% Pure Olive Oil' appearing as printed and graphic matter upon aforesaid case containing said food was false and misleading in that said food did not contain 20% pure olive oil;
 
 
 16
 "That said food, when introduced and delivered and caused to be introduced and delivered for introduction into interstate commerce, as aforesaid, was further misbranded within the meaning of 21 U.S.C.A. § 343(k) in that said food contained an artificial flavoring and did not bear labeling stating that fact;
 
 
 17
 "That the said Loumen Drug Co. and Louis Memmoli, defendants herein, did, on or about and between July 1947 and June 9, 1948, deliver to the Antonio Corrao Corporation, aforesaid, a substance known as squalene for the purpose of aiding, abetting, counseling, inducing and procuring the introduction and delivery for introduction into interstate commerce of the food misbranded as aforesaid."
 
 
 18
 Counts 3, 5, 7, 9, 11, 13 and 15 also, in variant forms, charge adulteration; counts 4, 6, 8, 10, 12, 14 and 16 also, in variant form, charge misbranding. Counts 9 to 16, inclusive, each charge that the alleged act was done "with intent to defraud and mislead."
 
 
 19
 The pertinent sections of 21 U.S.C.A. read as follows:
 
 
 20
 "§ 331. The following acts and the causing thereof are hereby prohibited:
 
 
 21
 "(a) The introduction or delivery for introduction into interstate commerce of any food * * * that is adulterated or misbranded.
 
 
 22
 * * * * * *
 
 
 23
 "§ 333. (a) Any person who violates any of the provisions of section 331 shall be guilty of a misdemeanor and shall on conviction thereof be subject to imprisonment for not more than one year, or a fine of not more than $1,000, or both such imprisonment and fine; * * *.
 
 
 24
 "(b) Notwithstanding the provisions of subsection (a) of this section, in case of a violation of any of the provisions of section 331, with intent to defraud or mislead, the penalty shall be imprisonment for not more than three years, or a fine of not more than $10,000, or both such imprisonment and fine.
 
 
 25
 * * * * * *
 
 
 26
 "§ 342. A food shall be deemed to be adulterated —
 
 
 27
 * * * * * *
 
 
 28
 "(b) (1) If any valuable constituent has been in whole or in part omitted or abstracted therefrom; or * * * (4) if any substance has been added thereto or mixed or packed therewith so as to * * * make it appear better or of greater value than it is.
 
 
 29
 * * * * * *
 
 
 30
 "§ 343. A food shall be deemed to be misbranded —
 
 
 31
 "(a) If its labeling is false or misleading in any particular.
 
 
 32
 * * * * * *
 
 
 33
 "(k) If it bears or contains any artificial flavoring * * * unless it bears labeling stating that fact * * *."
 
 
 34
 After hearing the evidence, the judge filed an opinion reading in part as follows:
 
 
 35
 "The Government's witnesses testified, in brief and inter alia, as follows: that squalene is a hydrocarbon which occurs naturally in shark liver oil, olive oil, and to a very much lesser extent, in peanut oil, cottonseed oil and other vegetable oils; that the defendant Antonio Corrao Corporation is engaged in the blending and sale and shipping in intrastate and interstate commerce of olive oil, peanut oil and other edible oils; that the defendants Antonio Corrao and Paul Corrao are officers of the said corporation and responsible for the operation of its business; that the said three defendants, for the purpose of making the product appear better and of greater value added squalene to a blend of peanut oil and olive oil, which they thereafter sold and shipped in interstate commerce; that there is no scientific method of distinguishing squalene present in olive oil; that prior to the aforementioned interstate shipments government chemists had added anthranilic acid, a coal tar intermediate, as a tracer or marker, to a supply of squalene which had been extracted from shark liver oil at the plant of Distillation Products, Inc., at Rochester, New York; that anthranilic acid is not a natural component of squalene or olive, peanut or other vegetable oil; that the squalene to which anthranilic acid had been added, as aforesaid, was thereafter shipped to several addresses in Brooklyn, New York, where the plant of the defendant Antonio Corrao Corporation is located. (There was no testimony, however, that any of such squalene was shipped to said defendant Corporation.) That government chemists analyzed samples taken from the oils shipped in interstate commerce, as aforesaid, and found, as they testified, that they contained anthranilic acid, which, as hereinabove stated, is not a natural component of olive oil, peanut oil or squalene. That the cans in which said oil was shipped in interstate commerce bore labels containing, among other things, the statement `80% choice peanut oil and 20% pure olive oil'; that the government chemists found, after tests and analyses, that the said cans were misbranded in that the contents thereof contained less than 20% of olive oil.
 
 
 36
 "The defendants' witnesses categorically denied that the said oils shipped in interstate commerce were in any manner adulterated or misbranded. Experts, called in behalf of the defendants, testified that they had made analyses of samples of the said oil and found no anthranilic acid or other adulterant present therein. At least one of them testified further that the blend of oil contained no artificial flavor. At the conclusion of the trial of the case counsel for the defendants Louis Memmoli and Loumen Drug Company moved in behalf of his clients for the dismissal of the indictment as against them on the ground that the government had failed to establish beyond a reasonable doubt their guilt of the crimes charged in the indictment. The motion was granted.
 
 
 37
 "The government has failed to establish beyond a reasonable doubt that the defendant Paul Corrao authorized or directed the alleged adulteration and/or misbranding of the oils, or controlled the blending operation, or was otherwise responsible for the acts which are the subject matter of the indictment. Consequently, the indictment and each and every count thereof, is dismissed as against the defendant Paul Corrao.
 
 
 38
 "Respecting the defendants Antonio Corrao and Antonio Corrao Corporation: I am called upon to resolve a sharp conflict in the testimony of the government and defense experts with respect to the alleged misbranding and adulteration.
 
 
 39
 "As to the charge of misbranding, the government testimony consisted largely, if not entirely, of the results of taste or flavor test. It was neither effective nor adequate. Two government witnesses stated they had tasted samples of the oil in question and detected an artificial flavor which they did not identify. The evidence in the case indicates that squalene is colorless, ordorless and tasteless, and there was no evidence that the alleged artificial flavor was that of anthranilic acid, if, indeed, it has a flavor. In addition, there was a great variance in the testimony of the government's expert witnesses as to the extent of the alleged deficiency in olive oil.
 
 
 40
 "The witness Damasiewicz, using the taste test, estimated that there was 5 to 10% of olive oil in the blend, whereas Dr. Fitelson, after a similar test, estimated the olive oil content to be between 2 and 3%. I do not question their expertness, but I do have serious doubts as to the efficacy of a test which could produce such a wide difference and range of expert opinion, particularly so when the testimony reveals that part of the olive oil used in the blend was refined olive oil, which is tasteless. I do not believe such proof is of the standard required to support a conviction of the charge of misbranding, and hence, counts 2, 4, 6, 8, 10, 12, 14 and 16 of the indictment are dismissed * * *
 
 
 41
 "As hereinbefore stated, the government charges that at the time of the introduction and delivery in interstate commerce of the aforementioned blended oils, the same was adulterated in that (1) a valuable constituent, to wit: olive oil had been in whole or in part omitted therefrom, and (2) artificial flavor and squalene had been added thereto and mixed and packed therewith so as to make said food appear better and of greater value.
 
 
 42
 "The government contends, inter alia, that by proving that squalene was added to the blended oils referred to in the indictment it inferentially establishes that olive oil was in whole or in part omitted therefrom.
 
 
 43
 "The natural squalene content of olive oil varies with the geographical source of the oil and the climatic and other conditions under which it is produced. There was no evidence to indicate the squalene content of the said blended oil prior to the alleged adulteration. Hence, the government has failed to establish that the same was adulterated `in that olive oil, a valuable constituent, had been in whole or in part omitted therefrom' as alleged in counts 1, 3, 5, 7, 9, 11, 13 and 15 of the indictment.
 
 
 44
 "However, the testimony of the government witnesses, particularly Dr. Fitelson, and the tests made in the courtroom during the trial convince me beyond a reasonable doubt that the defendants Antonio Corrao and Antonio Corrao Corporation adulterated the blended oils referred to in the indictment by adding squalene thereto and mixing it therewith in order to make the same appear to be better and of greater value.
 
 
 45
 "Accordingly, I find the said defendants Antonio Corrao and Antonio Corrao Corporation guilty of counts 1, 3, 5, 7, 9, 11, 13 and 15 of the indictment."
 
 
 46
 From judgments sentencing the defendants Antonio Corrao and Antonio Corrao Corporation, they appeal.
 
 
 47
 James M. McInerney, Washington, D. C., Frank J. Parker, Brooklyn, N. Y., and George W. Percy, Jr., Southampton, N. Y. (Vincent A. Kleinfeld, Washington, D. C., Edward K. Adelsheim, Chevy Chase, Md., and Bernard D. Levinson, Washington, D. C., of counsel), for appellee.
 
 
 48
 Avrutis & Zizmor, New York City, and Julius Zizmor, New York City, for appellants.
 
 
 49
 Before AUGUSTUS N. HAND, CHASE and FRANK, Circuit Judges.
 
 
 50
 FRANK, Circuit Judge.
 
 
 51
 To the facts stated in the trial judge's opinion, the following should be added: Olive oil is more expensive, and is regarded by consumers as more desirable, than vegetable oils. To cheat consumers, some blenders sold blends of olive and peanut oil (or of other vegetable oils) containing a smaller percentage of olive oil than that stated on the labels. Until 1943, the enforcing officials had been unable to detect the amount of olive oil in such a blend. In 1943, there developed the squalene test designed to enable the officials to do so; this test depends upon the fact that olive oil has a relatively large quantity of natural squalene. However, if a blender adds a sufficient amount of squalene obtained from shark-liver oil, the officials using the squalene test will be deceived as to the percentage of olive oil in the blend, unless they discover the fact of the addition of such an amount of shark-liver squalene.
 
 
 52
 1. The judge acquitted defendants of the misbranding charges, including a charge that the label was false and misleading in representing that the blend contained 20% of olive oil. The defendants were also charged with adulteration (a) under 21 U. S.C.A. § 342 (b) (1), in that olive oil had been in whole or part omitted, and (b) under 21 U.S.C.A. § 342(b) (4) in that they added squalene "so as to * * * make said food appear to be better or of greater value than it is, viz. an article containing more olive oil than present in said food." The judge acquitted them of the charge under § 342(b) (1). He held them guilty of the charge under § 342(b) (4). He found that they had added some squalene, and we shall assume that this finding was correct.
 
 
 53
 2. The form of adulteration prohibited by § 342(b) (4) is so-called "economic adulteration," i.e., that which adversely affects the consumer's pocketbook through the creation of a false appearance, enabling the seller to palm off on the consumer an inferior product as one of superior quality.[1] The addition of shark liver squalene cannot create such a false appearance to the consumer, since the squalene cannot be seen, tasted or smelt by the consumer, and so cannot cause the blend to appear to the consumer to be "better or of greater value than it is." There was, therefore, no direct deception of the consumer.
 
 
 54
 3. However, we shall assume, arguendo, that § 342(b) (4) covers indirect deception, i.e., the addition of an ingredient which creates a false appearance to the enforcing officers, leading them to believe that the product is "better or of greater value than it is", in such a manner that the consumer, by losing the protective services of the officials, suffers an economic disadvantage.
 
 
 55
 On that assumption, there would have been a violation here, if the squalene added by defendants made the blend seem to the officers, when they used the ordinary squalene test, to contain 20% of olive oil, although actually it contained less; for then, by the defendants' act, the consumer, to his economic harm, would have lost the officers' protective services. But here no violation of that kind was proved, for the judge found that the government failed to prove that the olive oil content was less than 20%.
 
 
 56
 It is suggested, however, that indirect deception, in violation of the statute, occurred if the added squalene, on an ordinary squalene test, led the officers to believe that the blend contained a larger percentage of olive oil than it did contain, even if the actual percentage was 20%, i.e., the percentage represented to the consumer. It may be urged that such a construction of the statute is untenable because, unless there is less olive oil than that stated on the label, the consumer, who knows nothing of the squalene content, cannot be disadvantaged economically since he receives what he thinks he is buying. But we need not decide whether the suggested construction of the statute is correct, because, even if it is, no statutory violation was proved. For the judge expressly found: "The natural squalene content of olive oil varies with the geographical source of the oil and the climatic and other conditions under which it is produced. There was no evidence to indicate the squalene content of the said blended oil prior to the alleged adulteration." As there was no evidence of the squalene content of the blend before the shark-liver squalene was added, there was no evidence of the amount that defendants added, and therefore no evidence that the added amount was sufficient to create an appearance which would deceive the officials. For, according to the judge's finding, the correlation between (a) the quantity of natural squalene and (b) the quantity of olive oil is not so exact that the addition of any amount, however small, of sharkliver squalene will necessarily make it appear, on a squalene test, that the percentage of olive oil in a blend is greater than it actually is.
 
 
 57
 4. True, the judge found that defendants had added squalene "in order to make [the product] appear to be of better and greater value." This means that they acted with the purpose or intention of doing that which the statute forbids.[2] But, for the reasons stated above, there was no proof that defendants had done any act violating the statute. Under § 333(a), the forbidden act is a misdemeanor, even in the absence of any improper intent.[3] Under § 333(b), the forbidden act, plus an "intent to defraud or mislead," is a felony. Under neither of those sub-sections is there a crime if the defendant does not do the forbidden act, although he has an intent to violate. To illustrate: It has been held to be a violation of the statute for a seller of white poppy seeds to add coloring-matter that makes them blue, when naturally blue seeds fetch a higher price from consumers.[4] It could not be a violation if a seller, fully intending to render white seeds blue, added matter which actually left the appearance of the seeds wholly white.[5]
 
 
 58
 5. It may be true that, since the defendants, by adding some squalene, prevented the officials from learning what the original squalene content had been, they thereby frustrated the officials' efforts to find out whether or not the added squalene made the blend appear "better or of greater value than it is." Perhaps such conduct should be punishable. But we think the statute, as it now reads, does not prohibit it.
 
 
 59
 Reversed.
 
 
 
 Notes:
 
 
 [1]
 See Federal Security Administrator v. Quaker Oats Co., 318 U.S. 218, 230, 63 S.Ct. 589, 87 L.Ed. 724; United States v. Two Bags, etc., 6 Cir., 147 F.2d 123
 
 
 [2]
 In the colloquy in connection with the motion to set aside the verdict, the judge said: "I decided, however, that squalene was added. * * * Adding a foreign substance, such as squalene, for the purpose of making it appear to be a better product and of greater value I found them guilty on * * * Sometimes circumstances, inferences, spell out intent, and I could not understand how anybody could add squalene unless I believed that they did it intentionally to make the product look better and defraud the consuming public."
 
 
 [3]
 U. S. v. Dotterweich, 320 U.S. 277, 280, 64 S.Ct. 134, 88 L.Ed. 48; U. S. v. Kaadt, 7 Cir., 171 F.2d 600; Triangle Candy Co. v. U. S., 9 Cir., 144 F.2d 195
 
 
 [4]
 U. S. v. Two Bags, etc., 6 Cir., 147 F. 2d 123
 
 
 [5]
 This statute does not make an attempt a crime. Therefore, we need not here consider whether defendant's conduct would have constituted an attempt. Cf. Holmes, J., dissenting in Continental Wall Paper Co. v. Louis Voight & Sons Co., 212 U.S. 227, 267, 271, 29 S.Ct. 280, 296, 53 L.Ed. 486: "A man does not make conduct otherwise lawful unlawful simply by yearning that it should be so."
 
 
 CHASE, Circuit Judge (Dissenting):
 
 60
 The appellants were charged in count one with adulterating the blended oil (1) by omitting olive oil, which was a valuable constituent, in whole or in part; and (2) by adding squalene "so as to make said food appear to be better and of greater value, viz., an article containing more olive oil than present in said food."
 
 
 61
 They were charged in count two with misbranding for the same reasons, i.e., (1) omitting olive oil and (2) adding squalene.
 
 
 62
 The blend was branded as one containing 80% peanut oil and 20% olive oil. The only reliable proof of the percentage of olive oil in it was the proof of the amount of squalene. Squalene is found in olive oil in varying percentages depending upon the conditions under which the olives from which it is made are grown. So if a blended oil, when tested, is found to have at least as much squalene as any olive oil content of 20% would give it, there may be at least 20% of olive oil in it. But the greater the percentage of squalene the greater the percentage of olive oil apparently, and so the better the blend appears to be for, absent adulteration, the percentage of squalene varies directly with the olive oil content.
 
 
 63
 This blend when tested did show that much squalene and so the trial judge did not find any misbranding. We cannot, of course, disturb that finding. But it was made in the face of the fact that the same judge also found on adequate evidence that shark liver squalene had been added to the blend. This addition of squalene certainly required extra effort to say nothing of extra expense in making up the blend and that the addition was made to cover up an actual deficiency in olive oil, the more costly ingredient in the blend, was an inference plainly to be drawn from the known facts. Had the blend contained 20% of olive oil there would have been no advantage to be gained by adding squalene for there was no reason to spend money, time and effort to make it appear to be better than it was labeled. And when it was proved and found that shark liver squalene was put into the olive and peanut oil blend it was also proved, and it should have been found, that there was less olive oil in the blend than 20%.
 
 
 64
 However, my present concern is not primarily with an error which we cannot reach on appeal but with trying to prevent that error from being more far reaching than it should be. As to the charge of misbranding the acquittal must stand. But this failure to draw the proper inference of fact as to a deficiency in olive oil affected the first count charging adulteration only in part in that adulteration by the omission of olive oil was not found. Just as in respect to the misbranding charged in the second count what seems to have been the only fair inference was not drawn to establish adulteration by the omission of olive oil.
 
 
 65
 Nevertheless, when the judge came to deal with adulteration by the addition of shark liver squalene he did find that it was added to the blend "in order to make the same appear to be better and of greater value." He was not so handicapped as he had been before as to drawing permissible inferences from proved facts and in this respect gave effect to the inference that the shark liver squalene was added to make the blend appear to contain more olive oil than it actually did contain. The added squalene deceived the enforcement officials as to the actual olive oil content and brought such adulteration squarely within the scope of the statute.
 
 
 66
 I would affirm the judgment.