ELLIS, Judge.
This is an action by a prison inmate at Angola against Peerless Insurance Company, the public liability insurer of all vehicles owned and operated by the penitentiary. The facts surrounding the occurrence of the accident are not disputed and may be briefly summarized as follows:
Plaintiff had been assigned to a work detail and was a passenger in a two wheeled rubber tired cane buggy or trailer being pulled along a gravel road within the bounds of the State penitentiary at a speed of about IS to 18 miles per hour by a farm tractor. The buggy was joined to the tractor by a steel tongue which was hooked to the drawbar of the tractor by a steel pin. The cap of the pin had been welded to the shank by penitentiary inmates or personnel to prevent its slipping through the hole. The cap, however, had broken off, causing the shank to drop to the ground, disconnecting the tractor and trailer. The tongue of the trailer fell to the ground causing an abrupt stop which tossed the plaintiff out, causing the injuries which are the subject of this suit.
The trial judge, on rehearing, reversed himself and gave judgment for the plaintiff in the amount of $1,700.00.
In order to establish negligence, the plaintiff relies on LSA-R.S. 32:281 which, in part, requires chain connections on trailers operated upon the public highways of the State.
There were no safety chains on this trailer, nor on any of the other cane buggies at Angola. It is clear that the statute quoted is penal in nature. Nonetheless, the purpose of the statute was undoubtedly to prevent accidents and injuries should the *107 primary trailer coupling fail or become disengaged.
In Dixie Drive-It-Yourself System New Orleans Co. v. American Beverage Company, 242 La. 471, 137 So.2d 298, the Supreme Court held that a violation of a statute requiring a driver to display warning flags while stopped on a highway during the daytime is negligence per se and actionable if it is the proximate cause of the accident. Thus, there is nothing unusual in looking to such penal statutes in order to establish the standard of care intended by the Legislature.
In Steele v. Commercial Milling Co., 50 F.2d 1037 at page 1038, 84 A.L.R. 278 (6 Cir., 1931), a case involving a similar Michigan statute requiring safety chains with a given pulling capacity, it was held specifically that “Although this statute was penal in form, its breach would constitute adequate basis for civil liability for all damage directly and proximately caused thereby.”
The Louisiana statute should be looked upon as creating a standard of care to be met by those responsible for the operation of trailers, but insofar as its penal provisions are concerned, it is limited to “the public highways of this state.” However, this is not a criminal proceeding and we can discover no logic in the defendant’s argument that the standard of care should differ in a case arising on private property, and should not be applicable to the transportation of passengers in a trailer. In the case at bar a high standard of care should apply and be enforced upon those transporting inmates of penal institutions in an open trailer. These inmates have no discretion as to the means or methods or manner in which they are to be transported.
Defendant, however, argues that the statute was designed only to protect other highway users and not occupants of the vehicle using the highway in violation of its penal and civil requirement. We do not believe that a guest passenger is outside the group sought to be protected by the statute, but rather that the statute protects all except those responsible for the lack, of safety chains. Plaintiff had no responsibility for the lack of safety equipment on the prison’s trailer, nor right or authority to object to the failure of defendant to supply safe means of transportation. The State is guilty of negligence in failing tó provide the trailer with safety chains and such negligence was a proximate cause of the accident and resulting injury to plaintiff.
Obviously the presence or absence of safety chains would have no effect on whether or not the pin broke. However, once the pin failed, the chains could very easily have prevented the accident by keeping the trailer tongue from falling to the ground. We are not impressed by Mr. DeSoto’s speculation that the presence of a safety chain would have caused the cane buggy to swing freely, thus overturning both buggy and tractor. This assumes a safety chain too long to be of any value and is pure speculation. Furthermore, if it is impossible to make these trailers a reasonably safe means of transportation for those who have no choice but to ride therein, such use for such a purpose constitutes negligence per se.
Defendant argues that it is “absurd and illogical to find the operator of a vehicle negligent because he did not equip his vehicle with such equipment as the plaintiff would think adequate to protect him, such, for instance, as safety belts, puncture proof tires, etc.” This argument fails to recognize that the standard of care applied here has been established by the Legislature as evidenced by the criminal statute, which did not contemplate the use of trailers for transporting persons. In fact, under LSA-R.S. 32:284(A): “No person or persons shall occupy a house trailer while it is being moved upon a highway of this state.” We believe the proper standard of care for the operation of trailers for transporting inmates of a penal institution require safety chains so as to minimize as far as possible *108 injury to such persons in the event of an accident.
Defendant further argues that unless the tractor driver can be found negligent there can be no recovery, as “the only insured under the provisions of the policy was Harold Coston, driver of the tractor.” Such a limited application of a public liability insurance policy would have to clearly appear from its terms and the policy is not before this court. In the answer to the original petition, however, defendant admitted issuing a public liability insurance policy to the State “protecting the State of Louisiana against claims within the limits of said policy resulting from the use, maintenance and operation of certain vehicles.” (Emphasis supplied) Plaintiff does not seriously rely on negligent use or operation of the vehicle, but on the fact that the trailer was not properly equipped.
As a result of the accident on March 9, 1962, plaintiff sustained a fracture of the distal'third of the left clavicle with inferior angulation of the distal fragment and was placed in a harness. He was discharged from the hospital on March 14, and on March 19 a “T” splint was applied. X-rays taken that date showed that the position of the fragments was good. Plaintiff complained of pain to the hospital staff as late as June 21, 1962 and testified that pain bothered him on guard duty even at the time of the trial. This however was contrary to his answer to a leading question propounded on October 4, 1962, during a discovery deposition.
The plaintiff was unable to work for seven weeks and worked with some inconvenience for some time thereafter.
There is evidently some visible and permanent angulation of the collarbone, as the plaintiff himself was offered, produced and filed into -evidence and was identified as “P-6”. The court received the evidence and authorized substitution of a copy. We have searched the record in vain and can find neither the plaintiff himself or a copy. The medical evidence discloses that there should be no functional disability, however, connected with the visible deformity.
In view of the above described injuries, and bearing in mind that plaintiff did not suffer any loss of wages or incur any medical expense, we believe that an award of $1,700.00 is appropriate. Plaintiff did not ask that it be increased and defendant has not .complained to this court that it is excessive.
Accordingly, the judgment of the lower court awarding plaintiff $1,700.00 is affirmed.
Affirmed.